STATE of Minnesota, Respondent,

v.

Bruce Mitchell KUTCHARA, Appellant.

No. C8–82–1093.

Supreme Court of Minnesota.

July 6, 1984.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Linda F. Close, Sp. Asst. Attys. Gen., St. Paul, Julius E. Gernes, Winona County Atty., Winona, for respondent.

AMDAHL, Chief Justice.

Defendant was found guilty by a district court jury of assault in the third degree and fleeing a police officer in a motor vehicle, Minn.Stat. §§ 609.223 and 609.487, subd. 3 (1982). The trial court sentenced defendant for the assault to 32 months in prison, which is the presumptive sentence for the assault (a severity level IV offense) when committed by a person with a criminal history score of five. On appeal defendant contends (1) that his convictions should be reversed outright because the evidence was such that the jury should have found that he acted in self-defense, (2) that he should be given a new trial because the trial court prejudicially erred (a) in admitting *Spreigl* evidence, (b) in allowing the use of prior convictions to impeach defendant's credibility, (c) in failing to let defense counsel personally examine certain medical records of the victim of the assault, and (d) in failing to give certain instructions bearing on his claim that he was resisting an unlawful arrest; and (3) that his sentence should be modified because the trial court erred in computing his presumptive sentence duration and erred in refusing to depart dispositionally and place him on probation. We affirm defendant's convictions but reduce the sentence duration from 32 months to 25 months.

This prosecution arose from an incident in which defendant seriously beat a Winona Police Officer after the officer stopped his car and approached defendant in response to an obscene greeting by defendant. After administering the beating, defendant fled on his motorcycle.

■ 1. Defendant's first contention is that he is entitled to an outright reversal of his convictions because the evidence was such that the jury should have found that he acted in self-defense. The police offi-

cer's testimony, which the jury was free to credit, clearly was sufficient to support the convictions. The jury was free to discredit defendant's testimony that he did not attack the officer, testimony that was unbelievable given the evidence of the seriousness of the officer's injuries. Defendant's claim that the officer attacked and injured him was rebutted by evidence suggesting that any injuries to defendant were sustained in an altercation at a bar preceding the confrontation with the officer.

2. Defendant's contention that he did not receive a fair trial is based on a number of claims of trial error.

■ (a)· Defendant claims first that the trial court erred in admitting evidence concerning the earlier altercation at the bar. We hold that the trial court had discretion to admit this evidence pursuant to Minn.R. Evid. 404(b), which provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Since the evidence did not tend to show that defendant was guilty of another crime, the chance of it creating unfair prejudice was less than is ordinarily the case when evidence is admitted under Rule 404(b). Further, this is not the type of case in which, but for the evidence admitted under Rule 404(b), the jury would have concluded that defendant was a model law-abiding citizen. The jury would have known in any event that the police knew defendant, that he admittedly shouted obscenities at the officer, and that he had a prior criminal record.

■ (b) Defendant next contends that the trial court erred in letting the state use two of his prior convictions to impeach his credibility when he testified. Defendant had five prior felony convictions. The trial court let the state use only two of these, a 1974 conviction of attempted burglary and a 1974 conviction of attempted aggravated robbery. Significantly, among the three convictions that the court did not let the state use was a prior assault conviction. Under our decisions, the trial court clearly did not abuse its discretion in letting the state use the two prior convictions. *State v. Bettin*, 295 N.W.2d 542 (Minn.1980); *State v. Brouillette*, 286 N.W.2d 702 (Minn. 1979); *State v. Jones*, 271 N.W.2d 534 (Minn.1978).

■ (c) Defendant next complains about the trial court's refusal to let him examine the victim's private medical records going back 5 years to see if there was anything in them that might bear on his claim. A crime victim's *past* medical records are generally protected from disclosure by the physician-patient privilege. Minn.Stat. § 595.02(4) (1982). However, the medical privilege, like other privileges, sometimes must give way to the defendant's right to confront his accusers. *State v. Leecy*, 294 N.W.2d 280, 283 (Minn.1980); Westen, *The Compulsory Process Clause*, 73 Mich.L. Rev. 71, 170–73 (1974). In this case the defendant had full discovery of all the X-rays and other medical records relating to this particular incident, and the trial court viewed all the other medical records going back 5 years *in camera* to see if there was anything relevant to the case. *See, Syrovatka v. State*, 278 N.W.2d 558, 562 (Minn. 1979) (remanding for *in camera* examination of informant to determine if defendant's right of confrontation should prevail over privilege relating to identity of informer). We believe that the trial court handled the issue correctly.

(d) Defendant makes three separate claims relating to the instructions. He argues that the trial court prejudicially erred in failing to instruct the jury specifically that a person has a right to resist an unlawful arrest, that the defense of self-defense could apply to the offense of fleeing a police officer, and that the state has the burden of proving that a defendant did not act in self-defense.

The trial court gave a standard instruction on the presumption of innocence and on the state's burden of proving defendant guilty beyond a reasonable doubt, stating specifically that "defendant does not have to prove his innocence." With respect to the two assault charges, the court stated:

In relation to the charges of assault in the second degree and assault in the third degree, the defendant asserts a defense of self-defense. The defendant is not guilty of such charges if he used reasonable force against [the police officer] to resist an offense against his own person, and such offense was being committed or the defendant reasonably believed that it was. It is lawful for a person who is being assaulted and who has reasonable grounds to believe that bodily injury is about to be inflicted upon him, to stand his ground and defend himself from such attack, and in doing so he may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person, in similar circumstances, to be necessary to prevent the injury which appears to be imminent. The kind and degree of force which a person may lawfully use in self-defense is limited by what a reasonable person in the same situation would believe to be necessary. Any use of force beyond that is regarded by the law as excessive.

The court did not specifically instruct the jury that the state has the burden of proving that a defendant did not act in self-defense. In discussing the offense of fleeing a police officer in a motor vehicle, the court did not say anything about self-defense but did state that one of the elements of the offense is that the officer was acting in the lawful discharge of an official duty.

■ In arguing that the trial court should have instructed the jury that a defendant has a right to resist an unlawful arrest, defendant argues that the officer violated his fourth amendment rights in stopping him and frisking him. We believe that the omnibus court properly ruled that

the stop and frisk were justified. In any event, as our cases make clear, Minnesota law does not recognize the right to resist an unlawful arrest or search. *See State v. Wick*, 331 N.W.2d 769, 771 (Minn.1983), and cases cited therein. As stated in *Wick*, "[W]hile a defendant would have a right to resist an officer in order to defend himself or another against unjustified bodily attack, assaultive conduct is not justifiable solely on the ground that the officers are violating the defendant's fourth amendment rights or on the ground that the defendant believes that the officers are violating his rights." 331 N.W.2d at 771. In this case the court did instruct the jury that defendant was free to use reasonable force to resist an offense against his person.

■ If a defendant is free to use reasonable force to resist an offense against his person by a police officer, he also is free to flee the officer. Possibly the court should have so instructed the jury, but the jury must have understood this in any event particularly since the court instructed the jury that one of the elements of the offense of fleeing a police officer is that the officer was acting in the lawful discharge of an official duty. If an officer is committing an offense against a person, he certainly is not acting in the lawful discharge of an official duty. If the jury had found defendant not guilty of having assaulted the officer but guilty of the fleeing charge, then one might conclude that the jury was confused about this. As it is, the jury's rejection of the self-defense claim in the context of the claim that defendant assaulted the officer suggests that the jury did not believe defendant acted in self-defense and would not have acquitted defendant of the fleeing charge even if the court had given a specific self-defense instruction with respect to that charge.

■ The court should have given a specific instruction that the state has to prove that a defendant did not act in self-defense.[1] *State v. King*, 287 N.W.2d 636

---

1. The court's failure to do so is possibly attributable to the court's reliance on the original ver-

(Minn.1979) (stating, in affirming conviction, that trial court's instructions on self-defense should have contained an explicit statement that the burden of proof on that issue was on the state). Defense counsel did not request such an instruction or object to the lack of one, and, as in the *King* case, the trial court's instructions did state that the defendant was not required to prove anything and that the burden of proof was on the state. Under the circumstances, we conclude that the trial court's instructions on self-defense were not plainly erroneous.

3. Defendant's final contention is that his sentence should be modified because the trial court erred in computing his criminal history score and thereby his presumptive sentence duration, and in refusing to depart dispositionally and place him on probation.

There is no merit to the argument that the court erred in refusing to depart dispositionally. *State v. Kindem*, 313 N.W.2d 6 (Minn.1981).

■ The trial court, in computing defendant's criminal history score at five (four felony points and one custody status point), gave defendant one point each for two 1974 offenses, aggravated assault and attempted aggravated robbery, which defendant argues were committed as part of a single behavioral incident, Minn.Stat. § 609.035 (1982). Defendant was sentenced in 1974 to concurrent 5-year terms in the reformatory. Defendant did not raise the issue then of whether double sentencing was barred by section 609.035, presumably because the sentences were concurrent and there were no foreseeable adverse consequences from the use of double sentencing. If the two offenses were committed as part of a single behavioral incident, defendant's criminal history score at the time of sentencing was four, not five, and his sentence duration should be re-

duced to 25 months. *Bixby v. State*, 344 N.W.2d 390 (Minn.1984).

The record indicates that the two offenses were committed when defendant and an accomplice, wearing masks, entered a Winona hotel in an attempt to commit a robbery in the lounge. As they entered the hotel they saw a night clerk walking from the kitchen into the lobby. The clerk, ignoring defendant's order to "hold it," ran from the building to the sheriff's office. Defendant fired two shots, but it is not clear from the record whether he fired the shots in an attempt to hit the clerk or only to scare him. In *State v. McAdoo*, 330 N.W.2d 104 (Minn.1983), we upheld the decision of the sentencing judge in that case giving the defendant points for both attempted robbery and for shooting at police where the record indicated that the defendant did not fire his gun to facilitate the commission of the crime or his escape but fired it after making a decision to "get" the police whether or not that was necessary to the escape. It appears that defendant fired the gun in this case in furtherance of the crime of attempted robbery. We therefore conclude that the two offenses were committed as part of a single behavioral incident under section 609.035. Under the circumstances, the trial court should have given defendant only one felony point for the two offenses rather than two points. Since defendant's criminal history score at the time of sentencing was four, not five, defendant's sentence duration must be reduced to 25 months.

Affirmed as modified.

KELLEY, J., took no part in the consideration or decision of this case.

sion of CRIMJIG 7.06, which, unlike the present version, did not contain an explicit statement that the burden of proof on the issue of self-

defense was on the state. 10 J. Cound, *Minnesota Practice, Jury Instruction Guides—Criminal* 7.06 (1977 and 1984 Supp).