STATE of Minnesota, Respondent,

v.

Timothy Terrance WITUCKI, Appellant.

No. C1–87–1276.

Court of Appeals of Minnesota.

Feb. 23, 1988.
Review Denied April 15, 1988.

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, Sp. Asst. Atty. Gen., St. Paul, Conrad I. Freeberg, Morrison Co. Atty., Gregory K. Larson, Asst. Co. Atty., Little Falls, for respondent.

Jack S. Nordby, Meshbesher, Singer & Spence Ltd., Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and SCHUMACHER and STONE *, JJ.

## OPINION

FOLEY, Judge.

Following a jury trial, appellant Timothy Terrance Witucki was found guilty of third degree assault. He was sentenced to the presumptive sentence of 15 months. Witucki appeals the judgment of conviction. We affirm.

## FACTS

Witucki and Eugene Rivetts are distant cousins. Rivetts had worked at hauling wood for Witucki. In 1985, he had an accident with Witucki's truck causing a $2400 loss. There was no insurance on the truck and Witucki claimed Rivetts was responsible for the damage. Witucki was apparently willing to settle the whole matter for $400. However, no settlement was ever reached.

On November 4, 1986 between 9:00 and 10:30 a.m. Rivetts, Michael Stumpf, and Craig Super went to the Union 76 station in Little Falls to buy some supplies to wash a truck. Stumpf was driving Rivetts' truck because Rivetts was on crutches. He was recovering from a sprained ankle and pulled tendons suffered in a recent motorcycle accident. Rivetts was seated in the middle of the truck cab, and Super was on the passenger side. Upon arrival, Super left the truck and went into the station.

At about the same time Witucki and Michael Finken drove into the Union 76 station. Finken noticed Rivetts and alerted Witucki to his presence.

After making his purchases inside the station, Super returned to Rivetts' truck. As Super was getting in, Witucki approached the truck. He opened the truck door and began talking to Rivetts about the money Rivetts owed him.

An argument ensued. Unfriendly words were exchanged. Witucki grabbed Rivetts coat; Rivetts then grabbed Witucki's shirt or coat. Rivetts claims Witucki raised his fist and said: "If I hit you, your head would be mush." Rivetts put his free hand up to ward off the blow. The two men's fingers interlocked. As their hands were separating, Witucki twisted Rivetts' finger and it "popped." As a result of this incident Rivetts sustained a broken index finger on his left hand. Rivetts pressed charges.

At trial, conflicting testimony was presented as to what actually happened in the altercation between Witucki and Rivetts. Witucki's witnesses were Finken and Mark Trettel. These men testified Richard Petrick was with them at the gas station when the incident in question occurred. They also testified they saw Witucki simply slap or bat Rivetts' hands down and they did not see the mens' fingers interlock. Petrick testified Witucki had asked him to testify as a favor. However, Petrick denied being at the Union 76 station on November 4, 1986 at the time of the incident.

Rivetts' witnesses were Stumpf and Super. Stumpf testified that "they were kind of batting hands around. * * * they kind of interlocked fingers after a while and they kind of twisted and pulled at the same time on Gene's finger or his hand." Stumpf also testified that he heard a pop and Rivetts said Witucki had broken his finger.

Super testified he got a glimpse of Witucki and Rivetts' hands touching and "after that I couldn't see nothing." Super also testified Witucki had offered to pay

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

him if he would corroborate Witucki's story.

The 12 person jury found Witucki guilty of assault in the third degree.

### ISSUES

1. Does failure to object to jury instructions preclude appellate review of these instructions?

2. Was the evidence insufficient to support the jury's verdict?

3. Did the trial court err by receiving evidence of Witucki's attempts to obtain false testimony to corroborate his story where trial counsel did not object or ask for a limiting instruction?

4. Did the prosecutor commit prejudicial errors during the trial that mandate a reversal of the trial court's decision?

5. Did the trial court err by not including a jury instruction of a lesser included offense?

6. Was Witucki denied effective assistance of counsel?

7. Was the sentence proper?

### ANALYSIS

1. Witucki argues the trial court's jury instructions are plainly erroneous because they did not make it absolutely clear that the state had to prove beyond a reasonable doubt that Witucki did not act in self defense, and the trial court did not submit an instruction on accident. Witucki admits trial counsel did not object to these instructions thereby preserving them for review on appeal. However, Witucki contends no objection was necessary as the failure to object was so fundamental as to amount to plain error affecting his substantial and fundamental rights.

■■■ Since Witucki failed to request a jury instruction or failed to object to the jury instruction as given, he is precluded from obtaining appellate review on the instructions unless they may be deemed "plain error" so that counsel's dereliction may be ignored. *See, e.g., State v. Stephani,* 369 N.W.2d 540, 547 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Aug. 20,

1985) (failure to request specific instructions or object to instructions precludes appellate review) (citing *State v. Berry,* 309 N.W.2d 777, 785 (Minn.1981)); *State v. Kutchara,* 350 N.W.2d 924, 928 (Minn. 1984) (trial court's failure to give a specific instruction regarding self-defense not plainly erroneous). Here, the jury instructions conformed to those set forth in the Minnesota Jury Instructions Guide. As these instructions did not constitute "plain error" and trial counsel did not object to them, Witucki is precluded from obtaining appellate review.

2. Witucki argues the evidence in this case was insufficient to establish an intentional felonious injury beyond a reasonable doubt. Witucki urges the court to consider this to be an altercation between two cousins; a domestic dispute if you will. Witucki contends the only reason criminal charges were brought is because of Witucki's reputation and because of other minor but numerous alleged infractions.

In reviewing the sufficiency of evidence to support a verdict, a reviewing court is "limited to determining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, the jury could reasonably conclude that [the defendant] was guilty of the offenses charged." *State v. Gelhar,* 392 N.W.2d 609, 611–12 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Oct. 29, 1986). The reviewing court must take the view of the evidence most favorable to the state and must assume the jury believed the state's witnesses and disbelieved any contrary evidence. *Id.* at 612.

Witucki's contention this is a trivial altercation between two cousins is irrelevant. There is also no merit to Witucki's argument the only reason the charge was brought was due to Witucki's reputation and the numerous minor infractions on his record. This case was brought to trial after an omnibus hearing in which it was determined there was probable cause to bring Witucki to trial on the charge of assault in the third degree. There is nothing in the record to indicate Witucki's repu-

tation or other minor infractions were considered.

■ Witucki also contends this conviction rests on circumstantial evidence of intent. Witucki argues when reviewing a verdict based on circumstantial evidence, the court must apply the following standard:

A conviction may be based on circumstantial evidence and will be upheld if the "reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of his guilt." A conviction based on circumstantial evidence may stand "only where the facts and circumstances disclosed by the circumstantial evidence form a complete chain which, in the light of the evidence as a whole, leads so directly to the guilt of the accused as to exclude beyond a reasonable doubt, any reasonable inference other than that of guilt."

*State v. Anderson,* 379 N.W.2d 70, 75 (Minn.1985) (citations omitted). However, Witucki omits the rest of the paragraph quoted from *Anderson* which continues:

Despite the stricter standard of review raised by a murder conviction based on circumstantial evidence, *a jury is in the best position to evaluate the circumstantial evidence * * ** and the jury must be given due deference.

*Id.* (emphasis added) (citations omitted).

The evidence was more than sufficient for the jury to find Witucki guilty of assault in the third degree. Substantial bodily harm is an element of third degree assault. Minn.Stat. § 609.223 (1986). Substantial bodily harm includes "a fracture of any bodily member." Minn.Stat. § 609.02 subd. 7a (1986). Rivetts sustained a broken finger as the result of this altercation and the jury was in the best position to determine whether the assault was intentional. A person's intent must be determined from his words, if any, and actions in light of all the surrounding circumstances. *State v. Johnson,* 374 N.W.2d 285, 288 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985) (citing *State v. Whisonant,* 331 N.W.2d 766 (Minn.1983)). In-

tent is a subjective state of mind and is usually established by reasonable inferences drawn from surrounding circumstances. *Johnson,* 374 N.W.2d at 288 (citing *State v. Schweppe,* 306 Minn. 395, 237 N.W.2d 609 (1975)).

Here, the jury chose to disbelieve and disregard Witucki's testimony and that of his witnesses which claimed Witucki acted in self-defense and merely batted Rivetts' hand down. These witnesses' stories were inconsistent. They changed from the time the witnesses gave them to the investigating officer to the time the case came to trial.

The jury was also entitled to believe the testimony of Rivetts, Stumpf and Super, who were all present in the truck when the offense occurred. They testified Witucki appeared angry, leaned into the truck and grabbed Rivetts. They stated Rivetts raised his hand to block Witucki and Witucki grabbed that hand. Their fingers interlocked and Witucki grabbed, pulled and twisted Rivetts' fingers until one popped. The jury could reasonably infer from this testimony Witucki assaulted Rivetts because he intended to cause fear in Rivetts of immediate bodily harm or that he intentionally inflicted bodily harm upon Rivetts and that the assault resulted in substantial bodily harm.

3. Witucki argues the evidence of his efforts to convince Petrick and Super to perjure themselves at Witucki's trial was improperly admitted because it is inadmissible character evidence under Minnesota Rule of Evidence 404(b), it is not supported by clear and convincing evidence, it is clearly prejudicial, and there was no limiting instruction.

■ Evidence of a person's character is inadmissible to prove that a person acted in conformity therewith. Minn.R.Evid. 404(a). However, character evidence can be properly admitted to show consciousness of guilt. *State v. Roy,* 408 N.W.2d 168 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. July 22, 1987).

■ In *Roy,* evidence relating to Roy's attempts to destroy the crime scene were

"probative as circumstantial evidence of [his] consciousness of guilt, and was intimately connected with the crime." *Id.* at 172. Similarly, in this case, evidence relating to Witucki's efforts to suborn perjured testimony is probative as circumstantial evidence of Witucki's guilt, and is tied directly to the crime.

■ Witucki also argues the evidence of his participation in other misconduct must be clear and convincing. Witucki contends in this case the evidence was marginal, questionable and doubtful. Witucki asserts the duty to give the accused the benefit of the doubt required the exclusion of this evidence even though there was no objection to it at trial.

The evidence was clear and convincing to the jury. Both Petrick and Super testified that Witucki had tried to get them to change their stories to comport to Witucki's version. However, neither man was willing to perjure himself. After hearing and evaluating this evidence the jury decided it was credible.

■ Witucki further argues this evidence was prejudicial. The character evidence was properly admitted at trial to show consciousness of guilt. Simply because this evidence may have been prejudicial does not mean it should have been excluded. " 'Unfair prejudice,' as used in Rule 403, does not mean the damage to defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on improper basis." *United States v. Mendez–Ortiz,* 810 F.2d 76, 77, 79 (6th Cir.1986), *cert. denied* (citing *Wade v. Haynes,* 663 F.2d 778, 783 (8th Cir.1981), *aff'd,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). Here there is nothing to suggest the jury's verdict was improperly based on the evidence. In addition, the trial court gave an adequate limiting instruction.

4. Witucki argues the prosecutor's questions on intent, his conduct during trial and his summation were improper and prejudicial.

■ Witucki's argument that it was improper and prejudicial for the prosecutor to ask Rivetts whether Witucki's acts appeared to be intentional is without merit. While it is improper to testify as to the subjective intention or knowledge of another, it is proper for the prosecutor to inquire of the complainant what was going through his mind when the actions occurred. *See State v. Salazar,* 289 N.W.2d 753, 755 (Minn.1980) (trial court did not err in allowing prosecutor to ask witness whether defendant was defending himself against an attack when he stabbed victim because the question sought to elicit testimony regarding whether the witness saw the victim do anything which might have prompted the defendant to stab him).

Rivetts did not testify as to Witucki's intent. He testified only as to what meaning the action conveyed to him under the circumstances. His testimony was not based on something beyond his own knowledge and was properly admitted.

This court was only supplied with a partial transcript. From this transcript it is impossible for this court to determine whether the conduct of the prosecutor was clearly prejudicial.

"Normally, a criminal defendant cannot obtain a new trial on appeal by establishing that error occurred in the conduct of the trial unless he provides this court with a complete transcript or an appropriate stipulation concerning what would be disclosed by a complete transcript" because "[w]ithout such a transcript or stipulation, we cannot verify whether the error resulted in prejudice."

*State v. Axford,* 417 N.W.2d 88, 93 (Minn. 1987) (quoting *State v. Anderson,* 351 N.W.2d 1, 2 (Minn.1984).

■ Even if we could say that the partial transcript provided this court supported a conclusion that prejudicial error occurred, we will not reverse. It is always possible that the portions of the transcript not provided would show that any error was invited or cured. *Id.*

■ 5. Witucki argues it was plain error for the trial court not to give a jury instruction on a lesser included offense of

fifth degree assault under Minn.Stat. § 609.224 (1986).

Fifth degree assault would not have been a proper jury instruction. Rivetts' finger was broken as the result of Witucki's assault. This is the type of substantial bodily harm required for an assault in the third degree. Minn.Stat. § 609.223 (1986). Because Witucki broke Rivetts' finger, the jury could not have found him guilty of assault in the fifth degree but not guilty of assault in the third degree. *See State v. Ostlund,* 416 N.W.2d 755, 766 (Minn.Ct. App.1987), *pet. for rev. filed* (Minn. Jan. 15, 1988). Therefore, had a jury instruction been requested, the trial court would have been under no obligation to submit it to the jury as it was not applicable.

6. Witucki contends his trial counsel did not object to inadmissible evidence or to the improper remarks of the prosecutor. Witucki asserts trial counsel did not request cautionary and curative limiting instructions or an instruction on accident or on a lesser included offense. Witucki argues there would have been no conviction but for counsel's neglect.

Minnesota courts have adopted a two prong test to determine whether a new trial should be granted due to ineffective assistance of counsel.

The defendant must affirmatively prove that his counsel's representation "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Gates v. State,* 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984)).

The alleged inadmissible evidence that trial counsel failed to object to refers to Witucki's attempt to obtain false testimony. As we concluded above, this evidence was properly admitted. Even if we were to exclude this testimony, there was sufficient other evidence from which a jury could conclude Witucki was guilty of the offense charged. In addition, trial counsel's not requesting an instruction on accident or on a lesser included offense is of no significance as he was not entitled to these instructions. Therefore, Witucki has failed to prove he was denied effective assistance of counsel.

7. Witucki contends the trial court considered much questionable evidence and conjecture in arriving at his sentence. Witucki asserts the sentence exaggerates the offense and in the interest of justice this court can review the sentence.

"An appellate court will not generally review the trial court's exercise of its discretion in cases where the sentence imposed is within the presumptive range." *State v. Starnes,* 396 N.W.2d 676, 681 (Minn.Ct.App.1986) (citing *State v. Williams,* 337 N.W.2d 387, 391 (Minn. 1983)).

This is a presumptive sentence. There is nothing in the record to indicate it was based on improper consideration.

## DECISION

Affirmed.