STATE of Minnesota, Respondent,

v.

Robert Joseph BRENNER, Appellant,

Northwest Publications, Inc.,
et al., Respondents.

No. C9–92–682.

Court of Appeals of Minnesota.

Aug. 18, 1992.

Review Granted Sept. 29, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Michael Furnstahl, Asst. County Atty., Minneapolis, for the State.

Philip G. Villaume, Bloomington, Ronald I. Meshbesher, Minneapolis, Peter N. Thompson, St. Paul, for Robert Joseph Brenner.

Paul R. Hannah, St. Paul, for Northwest Publications, Inc., et al.

Considered and decided by HARTEN, P.J., and KLAPHAKE and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

This appeal is from an order denying appellant Brenner's motion to compel production of a reporter's notes for use in preparing for Brenner's trial on charges of criminal sexual conduct. *See* Minn.Stat. § 595.024, subd. 3 (1990). We reverse and remand for *in camera* review.

## FACTS

Appellant Robert Brenner is charged with counts of first and second degree criminal sexual conduct. The complaint alleges that Brenner engaged in sexual penetration and sexual contact with B.M.M., the daughter of Brenner's former girlfriend, Kim Bushay. The complaint alleges that Bushay forced her daughter to perform these sexual acts with Brenner.

The St. Paul Pioneer Press, owned by respondent Northwest Publications, published several articles about the Bushay–Brenner charges. These stories were based on interviews with Kim Bushay; Janice Houff, B.M.M.'s guardian; Karen Remley, Brenner's ex-wife; and Penny Humphreys. Brenner subpoenaed the notes of the reporter, Michelle Cook, and petitioned the court for an order disclosing the material, under Minn.Stat. § 595.024, subd. 1 (1990) (the free flow of information act).

The trial court denied Brenner's request, without reviewing the reporter's notes *in camera*. The court found that Brenner had not shown the reporter's notes were "relevant to the question of guilt." The court found that Brenner had provided only speculation that the notes were exculpatory, and had shown no impeachment value not obtainable from other sources. The court concluded Brenner had met none of

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn.Const. art.

the three statutory conditions for release of the reporter's notes under the free flow of information act.

## ISSUE

Did the trial court abuse its discretion in denying disclosure without reviewing the materials *in camera*?

## ANALYSIS

The free flow of information act provides that an application for disclosure of information gathered by the media

shall be granted only if the court determines after hearing the parties that the person making application, by clear and convincing evidence, has met all three of the following conditions:

(1) that there is probable cause to believe that the source has information clearly relevant to a specific violation of the law other than a misdemeanor,

(2) that the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights, and

(3) that there is a compelling and overriding interest requiring the disclosure of the information where the disclosure is necessary to prevent injustice.

Minn.Stat. § 595.024, subd. 2 (1990).

The free flow of information act, also known as the journalist shield law, strikes a balance between a criminal defendant's sixth amendment right to compulsory process and the media's first amendment interests. *See generally Branzburg v. Hayes*, 408 U.S. 665, 738–40, 92 S.Ct. 2646, 2678–80, 33 L.Ed.2d 626 (1972) (Stewart, J., dissenting) (balancing of first amendment interest against public interest in grand jury investigation).

The procedure of *in camera* review is used in other circumstances to balance a criminal defendant's need for requested materials against the privilege covering the materials. *See, e.g., State v. Paradee*, 403 N.W.2d 640, 641 (Minn.1987) (access to

VI, § 2.

county welfare confidential records); *State v. Kutchara,* 350 N.W.2d 924, 926 (Minn. 1984) (access to patient's medical records).

■ Northwest Publications argues that *in camera* review is not appropriate for media materials. However, the fact that media organizations are not state agencies is not relevant to the appropriateness of *in camera* review. Although medical privilege is held by the patient, not the hospital, the court may review the patient's medical records *in camera* in considering a disclosure motion. *See, e.g., State v. Hummel,* 483 N.W.2d 68, 71–72 (Minn.1992); *State v. Kutchara,* 350 N.W.2d at 926. The supreme court has stated:

> The in camera approach strikes a fairer balance between the interest of the privilege holder in having his confidences kept and the interest of the criminal defendant in obtaining all relevant evidence that might help in his defense.

*State v. Paradee,* 403 N.W.2d at 642.

■ The trial court in declining *in camera* review stated there was no evidence showing the decision on disclosure would be affected by *in camera* review. However, a party seeking disclosure cannot make such a precise showing of what *in camera* review would disclose. The court must balance the fact that *in camera* review will *always* provide a better basis for considering the defendant's motion against the intrusion that *in camera* review itself inflicts on the first amendment interest.

■ The three statutory conditions in the free flow of information act are drawn from Justice Stewart's dissenting opinion in *Branzburg v. Hayes,* 408 U.S. 665, 743, 92 S.Ct. 2646, 2681, 33 L.Ed.2d 626 (1972). The statute requires that there be "probable cause" to believe the information sought is "clearly relevant to a specific violation of the law." Minn.Stat. § 595.024, subd. 2 (1990). Northwest Publications argues that the "clear and convincing evidence" standard of proof places a heavy burden on Brenner. However, the showing of relevance required is only "probable cause." The interview notes are "clearly relevant" to the charges against Brenner,

even though their only potential usefulness to him may be for impeachment purposes.

The shield law requires a showing that "the information" cannot be obtained "by any alternative means or remedy." Minn. Stat. § 595.024, subd. 2(2) (1990). Northwest Publications argues that defense attempts to interview the witnesses are an alternative source of information under the statute. Brenner contends the witnesses' statements to the reporter are "unique bits of evidence," which he should not be required to seek by other means. *United States v. Cuthbertson,* 630 F.2d 139, 148 (3rd Cir.1980) ("*Cuthbertson I*"). The Third Circuit on a later appeal noted that the defendants themselves could interview the witnesses who had talked to the media. *United States v. Cuthbertson,* 651 F.2d 189, 196 (3rd Cir.1981) ("*Cuthbertson II*"). However, the court also noted that, insofar as the medial materials were sought for impeachment purposes, they had been ordered disclosed to the defendants at trial if those witnesses testified contrary to their statements to the media. *Id.* Thus, *Cuthbertson II* suggests that defense interviews are a reasonable alternative only insofar as the media interviews are sought for substantive purposes. For purposes of impeachment, there is no alternative to the statements already given, if they contradict trial testimony.

The statute requires that Brenner show "there is a compelling and overriding interest requiring the disclosure * * * where the disclosure is necessary to prevent injustice." Minn.Stat. § 595.024, subd. 2(3) (1990). Northwest Publications argues that there is less of a "compelling need" for statements sought solely for impeachment value. However, there is also a less substantial first amendment interest in "statements made for publication without any expectation of confidentiality." *United States v. LaRouche Campaign,* 841 F.2d 1176, 1181 (1st Cir.1988). The witnesses here all identified themselves to the reporter and are identified in the story. The qualified journalist's privilege is not limited solely to protection of confidential sources. *Cuthbertson I,* 630 F.2d at 147. However, "the lack of a confidential source

may be an important element in balancing the defendant's need for the material sought against the interest of the journalist." *Id.*

The persons interviewed by the reporter are potentially key witnesses against Brenner at trial. Particularly where there are allegedly statements that one of the witnesses was planning to blackmail Brenner, we conclude that *in camera* review is warranted.

■ Under the free flow of information act, the court must strike a balance between the sixth amendment right and the first amendment interest. We recognize that there is no automatic right to *in camera* examination. The request must be supported by a threshold showing. *State v. Hummel,* 483 N.W.2d at 72; *State v. Schmid,* 487 N.W.2d 539 (Minn.App.1992). However, this showing does not require an offer of proof concerning the likely contents of the documents sought to be reviewed. *Hummel,* 483 N.W.2d at 72. In requiring "evidence" that *in camera* review would affect the disclosure determina-tion, the trial court required more than a threshold showing and thus more than *Hummel* requires.

In this case the balancing favors pretrial *in camera* review. The trial court on remand shall make a determination as to disclosure of the notes of each witness' interview with the reporter. The materials shall be sealed as court exhibits pending disclosure or return to respondent Northwest Publications.

## DECISION

The trial court abused its discretion in denying disclosure without an *in camera* review.

Reversed and remanded.