**STATE of Minnesota, Respondent,**

**v.**

**Jason Alan OSTREM, Appellant.**

**No. C0–94–56.**

Court of Appeals of Minnesota.

Aug. 9, 1994.

Review Granted Oct. 27, 1994.

Timothy R. Anderson, Frederic Bruno & Associates, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Margaret H. Chutich, Cheryl Heilman, Asst. Attys. Gen., St. Paul, and Kenneth Kohler, Nobles County Atty., Worthington, for respondent.

Considered and decided by PETERSON, P.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

This is an appeal from a jury conviction for aiding and abetting burglary in the second degree and aiding and abetting theft in violation of Minn.Stat. §§ 609.582, subd. 2(a) (burglary), and 609.52, subd. 2(1) (1992) (theft). Appellant argues that: 1) the trial court's instructions on aiding and abetting after dismissing the original charges of second degree theft and burglary were error; 2) the photo line-up was so impermissibly suggestive as to violate due process; and 3) there was insufficient evidence to prove guilt. We reverse.

## FACTS

In the morning of November 2, 1992, the Schroeder residence in Worthington township was burglarized. Ardella Schroeder and her husband left their home around 8:30 a.m. and returned around 11 a.m. to find that

their safe was open and $6300 (mostly in one hundred and fifty dollar bills) was missing. A window screen had been slit to allow entry and the window frame had been popped out. There were two sets of footprints near the window.

The Schroeders' son, Kevin, happened to drive past their house after they left. He saw a black Charger with mag wheels parked in their driveway so he stopped to see what was going on. Two men were standing on the deck by the front door. Both men were in their twenties. One had longer hair, thick glasses and tennis shoes with fluorescent shoe strings. Kevin Schroeder offered the men a ride into town when they said that their car had overheated but they declined.

When Ardella Schroeder called her son to inform him of the theft, Kevin Schroeder remembered that he had seen a car similar to the black Charger at a garage. He called a friend at the garage and learned that the car belonged to Rodney Boomgaarden. The next day Kevin Schroeder picked Boomgaarden out of a photo line-up as one of the men who had been standing on the deck.

On November 24 Deputy Bruce Stugelmeyer observed a black Charger in Worthington. He approached and learned that Rodney Boomgaarden, Todd Weyker and Jennifer Evenson were in the car. The deputy found $1,650 in one hundreds and fifties on Boomgaarden and many new items such as stereo speakers in the trunk. Initially Boomgaarden denied having had car trouble in the last month, but then admitted that he and Todd Weyker had broken down at the Schroeder residence on November 22. Boomgaarden testified at appellant's trial that his car was overheated and that he did see Kevin Schroeder, but he denied burglarizing the house.

Boomgaarden wrote a note (that was intercepted) to Weyker while both were in jail which said, "write back as soon as possible and let me know what you said so our stories don't get f**ked up."

On approximately November 25 Kevin Schroeder was again asked to come to the police station to look at a photo lineup to possibly identify the second man on the deck. He was taken to the deputy's office and saw two photos in plain view, on the deputy's desk. One photo was of appellant Jason Ostrem's face and the other was of his tennis shoes. Schroeder identified the photos as showing the second man on the deck.

Earlier, appellant had come to the police station with Todd Weyker's girlfriend, Jennifer Evenson,[1] to pick up house keys from Weyker. When appellant arrived at the station Deputy Kenneth Thompson thought that appellant matched the description of the second man on the deck and took photos of appellant and of his tennis shoes. These were the photos that Kevin Schroeder identified.

Boomgaarden did not take the stand at his own trial, but did testify at a civil hearing. During appellant's trial, Boomgaarden was impeached on several points, but he remained consistent in his story that only Todd Weyker and he were at the Schroeder house.

Appellant testified that he spent the weekend at home with his wife. Todd Weyker was subpoenaed but did not appear. Appellant's wife did not testify. Kevin Schroeder testified that, after looking at a photo of both Weyker and appellant, he was sure that the appellant was the man he saw on the deck. Schroeder made an in-court identification of appellant.

On its own motion the trial court found as a matter of law that the evidence was insufficient to support the burglary in the second degree and theft charges; the court dismissed those charges but gave jury instructions on aiding and abetting second degree burglary and theft. The jury convicted on both counts. This appeal followed.

## ISSUES

1. Did the trial court err by instructing sua sponte on aiding and abetting charges which had not been originally charged after it had dismissed the original charges?

2. Was the photo lineup so impermissibly suggestive as to give rise to a substantial likelihood of misidentification?

1. Jennifer Evenson was appellant's wife's best friend.

3. Was the evidence insufficient to sustain appellant's convictions for aiding and abetting burglary and theft?

## ANALYSIS

### I. Aiding and Abetting Instruction

■ Under Minn.R.Crim.P. 17.05, a pre-verdict amendment is impermissible if it either charges a different offense or prejudices substantial rights of the defendant. *State v. Manley* 353 N.W.2d 649, 651 (Minn.App. 1984) (finding that the amended charge caused substantial prejudice where it shifted burden to defendant).

■ Minn.Stat. § 609.05 (1992) (liability for the crimes of another) controls the question of criminal liability for aiding and abetting. Citation to Minn.Stat. § 609.05 or the use of the "aiding and abetting" language in the charging instrument is not necessary for the jury to convict the defendant of aiding and abetting. *State v. Lucas,* 372 N.W.2d 731, 740 (Minn.1985); *see also State v. De-Foe,* 280 N.W.2d 38, 40 (Minn.1979) (affirming conviction for aiding and abetting where statute was not mentioned in complaint).

■ The trial court found as a matter of law that there was insufficient evidence to submit the charged burglary and theft offenses. On its own motion the trial court gave the aiding and abetting instructions, finding that aiding and abetting is not a lesser-included offense but the same crime.

The state contends that the court must instruct on the law even without a specific request by the parties under Minn.R.Crim.P. 26.03, subd. 18(5) ("in charging the jury the court shall state all matters of the law which are necessary for the jury's information in reaching a verdict"). Under *State v. Kobow,* 466 N.W.2d 747, 752 (Minn.App.1991), *pet. for rev. denied* (Minn. Apr. 18, 1991), even if no motion is made, the trial court has a duty to submit lesser-included offenses. Because aiding and abetting is not a separate offense from the underlying charge, *see State v. Britt,* 279 Minn. 260, 263, 156 N.W.2d 261, 263 (1968), the state's contention is that, like a lesser-included offense, a trial court must instruct sua sponte on an aiding and abetting charge.

But this analogy is misplaced. Where the obligation of a court to instruct sua sponte on lesser-included offenses may benefit either the prosecution or the defense depending on the case, here the trial court had already dismissed the underlying charges and thus the new instructions could benefit only the prosecution. It is true that the prosecutor did not seek the substitution of the aiding and abetting instructions, and we note that the trial court fully explained its legal reasoning on the record and gave counsel ample opportunity to respond, but even the appearance of partiality must be avoided. *Cf. Payne v. Lee,* 222 Minn. 269, 275, 24 N.W.2d 259, 263 (1946) (stating that in civil cases, "the necessity of unquestioned impartiality is one of wide recognition").

Our analysis turns on the fact that though neither party sought the instructions, only one party could benefit from the trial court's decision. Once the trial court had dismissed the original charges, the new instructions allowed the state "a second bite at the apple," and thus gave the appearance of favoritism toward the prosecution.

■ A conviction after a fair trial will not be invalidated unless the defect in the information misled the defendant as to the nature of the offense charged to the prejudice of his substantial rights. *See State v. Alexander,* 290 Minn. 5, 10, 185 N.W.2d 887, 890 (1971), (citing *State v. Pratt,* 277 Minn. 363, 366, 152 N.W.2d 510, 513 (1967) (expressing the rule stated above)).

Even if aiding and abetting is not a different substantive offense, the elements to establish second degree burglary and theft are different from the elements necessary to establish an offense of aiding and abetting. *Compare* 10A *Minnesota Practice* CRIMJIG 17.05.02 (1990) (second degree burglary) *and* 10 *Minnesota Practice* CRIMJIG 16.01 (theft) *with* Minn.Stat. § 609.05 (liability for crimes of another). Of particular prejudice to appellant is the fact that burglary requires the state to prove that appellant actually entered the dwelling, while aiding and abetting burglary could be proven upon a showing that appellant was present during the

burglary and actively assisted in transferring stolen property to the car. *See State v. Hayes,* 351 N.W.2d 654, 656 (Minn.App.1984), *pet. for rev. denied* (Minn. Sept. 5, 1984).

The focus is not on what appellant could have produced to counter the aiding and abetting charge, but on whether appellant "was confused as to the nature of the charges." *Defoe,* 280 N.W.2d at 40. Appellant learned of the aiding and abetting charges at the close of the evidence, when it was too late to seek other evidence or change trial tactics. *Cf. Alexander,* 185 N.W.2d at 890–91 (appellant's allegation that he was unable to prepare an adequate defense is without merit where appellant's counsel used language of complaint pertinent to charge of aiding and abetting on cross-examination). Thus, the prejudice to appellant was substantial.

Appellant also argues that, by amending the complaint without a motion having been made, the court violated the separation of powers doctrine because the decision to institute criminal proceedings is in the hands of the prosecutor. As we conclude that the instruction on aiding and abetting gave the appearance of partiality and caused appellant substantial prejudice, we need not decide that issue.

## II. Photo Lineup

■ Due process is violated if an identification procedure is so suggestive that there was a " 'very substantial likelihood of irreparable misidentification' by the witness." *State v. Blegen,* 387 N.W.2d 459, 463 (Minn. App.1986) (citing *Simmons v. U.S.,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)), *pet. for rev. denied* (Minn. July 31, 1986). On appeal, this court may review de novo the trial court's due process determination. *See State v. Biron,* 266 Minn. 272, 281, 123 N.W.2d 392, 398 (1963).

■ The reliability of an identification is "the guiding factor in the admissibility of both pretrial and in-court identifications." *Manson v. Brathwaite,* 432 U.S. 98, 106 n. 9, 97 S.Ct. 2243, 2249 n. 9, 53 L.Ed.2d 140 (1977). To determine if an identification is

sufficiently reliable to be admitted into evidence, the court must evaluate the totality of the circumstances surrounding the identification. *Blegen,* 387 N.W.2d at 463 (citing *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)). The court must balance factors showing the reliability of the identification against the corrupting effect of the suggestive procedure. *Id.* (citing *Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253). The factors that show reliability of the identification are:

1) the opportunity of the witness to view the criminal at the time of the crime;

2) the witness' degree of attention;

3) the accuracy of the witness' prior description of the criminal;

4) the level of certainty demonstrated by the witness at the confrontation; and

5) the length of time between the crime and the confrontation.

*Id.* (citing *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972)).

■ The omnibus hearing court [2] found that the single photo display was unnecessarily suggestive but, based on the witness' level of certainty and the accuracy of the description, refused to suppress the photo identification.

Kevin Schroeder spoke with the two men for several minutes, and though he did not suspect a burglary at the time, his curiosity was aroused. He gave the police a description of two men in their twenties, one with longer hair, tennis shoes with fluorescent shoe strings, and thick glasses. The length of time between viewing the men and seeing the photo was only two days. Kevin Schroeder testified that he had no doubt about his identification of appellant. But "a witness' feeling of confidence in the details of the memory generally do not validly measure the accuracy of that recollection." *See* Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure* (2d ed. 1992) § 7.5(f) at 354.

Schroeder knew that there had already been an arrest, that they were going to the deputy's office, and that the deputy wanted him to identify the second man he saw on the

2. A different judge presided at trial.

deck. Only two photos were on the desk: one of appellant's face and one of his tennis shoes with fluorescent strings. These circumstances give rise to the strong suggestion that appellant was believed to have been one of the burglars.

It is irrelevant what the deputy's intentions were; the focus of inquiry must be on the corrupting influence of possible misidentification. *See Simmons,* 390 U.S. at 383–84, 88 S.Ct. at 971. The danger is that "the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Id.*

Given the totality of the circumstances, the corrupting effect of the suggestive procedure weighs so heavily against the factors showing reliability as to give rise to a substantial likelihood of misidentification.

## III. Sufficiency of the Evidence

■ On review this court is "limited to determining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, the jury could reasonably conclude that [the appellant] was guilty." *State v. Witucki,* 420 N.W.2d 217, 220 (Minn.App.1988) (citation omitted), *pet. for rev. denied* (Minn. Apr. 15, 1988). The evidence must be viewed in the light most favorable to the state and we must assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *Id.*

■ The trial court found that there was insufficient evidence as a matter of law to sustain convictions for burglary in the second degree and theft. We hold that there is also insufficient evidence to sustain the jury convictions for aiding and abetting.

■ A defendant is criminally liable for another's criminal acts only if the defendant "intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn.Stat. § 609.05, subd. 1. But a defendant's "mere presence" at the scene of a crime does not prove that he aided and abetted the commission of the crime, because inaction, knowledge, or passive acquiescence do not rise to the level of criminal culpability. *State v. Russell,* 503 N.W.2d 110, 114 (Minn.1993); *cf. Hayes,* 351 N.W.2d at 656 (finding defendants guilty of aiding and abetting because they were present during burglaries and assisted in transferring stolen property to truck).

■ "Presence, companionship, and conduct before and after an offense are circumstances from which a person's criminal intent may be inferred." *Russell,* 503 N.W.2d at 114 (citation omitted). The only factors which allow an inference of appellant's possible guilt are presence and companionship: 1) Kevin Schroeder's identification of him as one of the men on the deck is evidence of appellant's presence at the scene of the crime; and 2) the fact that appellant knew Todd Weyker and Rodney Boomgaarden implies his possible companionship with them at the time of the crime.

But appellant's conduct after the crime weighs heavily against the possibility of his guilt. He went to the police station at the request of Weyker's girlfriend, and allowed photos of his face and tennis shoes to be taken. Further, while many parts of Boomgaarden's testimony were dubious at best, his consistent testimony was that only Todd Weyker was with him at the Schroeder residence. The note intercepted in jail did not mention appellant. Kevin Schroeder saw only two men, and only two sets of footprints were found at the scene of the crime. Though large amounts of cash were found on Boomgaarden and new merchandise in his car, none was ever found on or about appellant.

Kevin Schroeder testified that, based on a photo showing both Weyker and appellant, Weyker was not the man that Schroeder saw on the deck. But given the dubious reliability of the eyewitness identification, and the lack of any other evidence tying appellant to the crime, we conclude that there is insufficient evidence to sustain the convictions.

## DECISION

The trial court erred, after dismissing the original charges, in instructing, *sua sponte,* on aiding and abetting offenses which had

not been charged. The photo lineup was impermissibly suggestive and gave rise to a substantial likelihood of misidentification. Finally, there was insufficient evidence to prove guilt.

**Reversed.**

SHORT, Judge (dissenting).

I respectfully dissent. First, the trial court has discretion to amend the charge as long as no additional offense is introduced. Minn.R.Crim.P. 17.05; *see Gerdes v. State,* 319 N.W.2d 710, 712 (Minn.1982) (matter of allowing amendments lies in the sound discretion of the trial judge). "Aiding and abetting" under Minn.Stat. § 609.05 (1992) is not a substantive offense. *State v. Britt,* 279 Minn. 260, 263, 156 N.W.2d 261, 264 (1968). Under these circumstances and because Ostrem had notice of the charges he faced, the trial court acted within its discretion when it instructed the jury on aiding and abetting burglary in the second degree and aiding and abetting theft. In addition, Ostrem's alibi defense was unaffected by submission of the aiding and abetting theory.

Second, the record demonstrates that *(a)* Ostrem was present at the scene of the burglary, *(b)* Ostrem was in the company of Boomgaarden, *(c)* the eyewitness engaged in conversation with two men and later positively and accurately described Ostrem and Boomgaarden as the men, and *(d)* the witness also accurately described Boomgaarden's black Charger as the car involved in the crime. Given this evidence, the jury could reasonably have disbelieved Ostrem's alibi and concluded that Ostrem was involved in the burglary.

And third, the pretrial photo identification did not create a substantial likelihood of misidentification because *(a)* the witness had ample opportunity to view Ostrem at the scene, *(b)* the witness gave an accurate description of Ostrem, and *(c)* the witness had a high degree of certainty about his identification. Under these facts, there was little likelihood of misidentification. *See Neil v. Biggers,* 409 U.S. 188, 200–01, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972) (little chance of misidentification where witness had ample opportunity to observe defendant under ade-

quate light and expressed no doubt about her identification); *Simmons v. United States,* 390 U.S. 377, 385, 88 S.Ct. 967, 972, 19 L.Ed.2d 1247 (1968) (little chance of misidentification where robbery took place in well-lighted bank, witnesses were shown photos one day later, and witnesses displayed no doubt about the identification on cross-examination).

Ostrem received a fair trial and I would affirm the judgment of conviction.