*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1525**

State of Minnesota,
Respondent,

vs.

Melvin Eugene Snoddy,
Appellant.

**Filed November 21, 2016
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-14-13444

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Mark D. Nyvold,
Special Assistant Public Defender, Fridley, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and

Johnson, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his second-degree criminal-sexual-conduct conviction under Minn. Stat. § 609.343, subd. 1(a) (2012), arguing that the district court erred by denying his motion to issue judicial subpoenas for the victim's medical records. We affirm.

## FACTS

In October 2013, seven-year-old L.J. attended a party at a relative's house. According to L.J., after the party, she was driven with her brothers to appellant Melvin Snoddy's house to spend the night. She changed clothes at Snoddy's house and was wearing only underwear and one of Snoddy's t-shirts while watching television before bed. Snoddy touched her vagina with his hand on top of her underwear. Because L.J. felt uncomfortable, she asked to go to her room to sleep. Snoddy took L.J. into the bedroom and asked if he could lay down by her, but L.J. refused. Although Snoddy later denied any sexual conduct with L.J., he admitted hosting a family get-together in 2012 or 2013, after which L.J. and her brothers slept at his house.

L.J. testified that she told her mother about the incident but her mother did nothing in response. Approximately two months after the incident, L.J. told her grandmother about the sexual conduct. Her grandmother took L.J. to the doctor and to a forensic interviewing service. L.J.'s grandmother also provided this information to the police, who charged Snoddy with second-degree criminal sexual conduct.

Before trial, Snoddy moved for an in camera review of the documents in L.J.'s family's child-protection case, claiming that information involved the same incident of

sexual abuse and would be relevant to his defense. The district court granted the motion. After an in camera review of the child-protection records for L.J.'s family, the district court provided Snoddy with a single page of the records that included the statement that L.J. "has a mental health diagnosis of schizoaffective disorder."

At a motion hearing four days before trial, Snoddy moved to subpoena L.J.'s medical records from two facilities on the ground that false delusions and inability to distinguish fantasy from reality are symptoms of schizoaffective disorder and, therefore, based on L.J.'s "diagnosis," the records might be relevant to L.J.'s credibility as a witness. The district court denied Snoddy's motion, articulating three reasons: (1) Snoddy failed to make a sufficient showing that the evidence would be material and favorable, (2) evidence of the diagnosis would not be relevant and would be unfairly prejudicial, and (3) the motion was untimely and would result in a third continuance of trial.

Snoddy also requested that the district court conduct a competency hearing of L.J. because of her age and potential mental-health condition. The district court conducted the hearing and found L.J. to be a competent witness. Snoddy's theory of defense at trial was that L.J. is a liar whose story was inconsistent. Snoddy's counsel sought to impeach L.J.'s credibility based on her alleged history of telling falsehoods, including asking L.J. questions about the fact that her grandfather made her "hustle" to get money for him by lying to people about selling cookie dough or needing money for a trip. The jury found Snoddy guilty of second-degree criminal sexual conduct. This appeal follows.

**D E C I S I O N**

Snoddy argues that the information in L.J.'s medical records was potentially probative of L.J.'s credibility as a witness, and therefore his motion requesting judicial subpoenas for those records should have been granted. We review a district court's decision to limit a defendant's use of medical records to impeach a witness for abuse of discretion. *State v. Evans*, 756 N.W.2d 854, 872 (Minn. 2008).

Medical records are generally protected from disclosure due to the physician-patient privilege. *See* Minn. Stat. § 595.02, subd. 1(d), (g) (2014). But "the medical privilege 'sometimes must give way to a defendant's right to confront his accusers.'" *Evans*, 756 N.W.2d at 872 (quoting *State v. Kutchara*, 350 N.W.2d 924, 926 (Minn. 1984)). Even if a defendant is granted access to confidential material, it is not direct access—the evidence is first screened by the district court, which reviews the medical records in camera to determine whether the privilege must give way. *Id.*; *State v. Hummel*, 483 N.W.2d 68, 71 (Minn. 1992). "This approach 'strikes a fairer balance between the interest of the privilege holder in having his confidences kept and the interest of the criminal defendant in obtaining all relevant evidence that might help in his defense.'" *Evans*, 756 N.W.2d at 872 (quoting *State v. Paradee*, 403 N.W.2d 640, 642 (Minn. 1987)).

A defendant has no right to have a district court review confidential material unless certain prerequisites are satisfied. *Hummel*, 483 N.W.2d at 72. Before a district court will review records in camera, "a defendant must make some showing that a confidential file contains information that would be material and favorable to his case."

4

*Evans*, 756 N.W.2d at 872-73 (citing *Hummel*, 483 N.W.2d at 72). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *State v. Wildenberg*, 573 N.W.2d 692, 697 (Minn. 1998) (quoting *United States v. Baglely*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985)).

The supreme court's analysis of this issue in *Evans* is instructive. Following his conviction of first-degree murder of a peace officer, Evans appealed on multiple grounds, including the claim that the district court erred by limiting his access to the medical records of a witness to the murder who testified at trial. *Evans*, 756 N.W.2d at 862. The witness saw the murder while driving home with his family at approximately 2:00 a.m. on May 6. *Id.* at 861. Evans had learned by reviewing transcripts of police interviews of the witness's parents that the witness had agreed to go to the hospital on the night of May 5 following a family intervention. *Id.* at 871. The witness's mother told the police that the witness was schizophrenic although he had not been diagnosed as such. *Id.* Both parents advised the police that while the witness sometimes had hallucinations, he "was fine" the night of the shooting. *Id.* at 872.

Evans requested that the district court review all of the witness's medical records for information that might relate to the witness's symptoms of schizophrenia, arguing that the records were reasonably likely to contain information related to the witness's credibility. *Id.* at 871-72. The district court limited its review to the May 5 records and subsequently ordered production of a one-page redacted copy of the May 5 records. *Id.*

5

at 872. On review, the supreme court stated, "At most, Evans established that the records from the May 5 visit might contain [information that would have been material and favorable to Evans's ability to cast doubt on the witness's testimony]," but "Evans did not make any showing that any medical records existed prior to or after the May 5 visit" that would also contain relevant information. *Id.* at 873. As a result, the supreme court concluded that "the district court properly balanced [the witness's] right to privacy against Evans's right of confrontation and gave Evans access to that information potentially probative of [the witness's] credibility." *Id.*

Here, Snoddy contends that he made the requisite showing that the evidence was material and favorable by: (1) stating why he was seeking the information, (2) providing a page of the child-protection record that referred to a diagnosis of schizoaffective disorder, and (3) describing symptoms of the disorder at the motion hearing. Snoddy conceded in argument:

> [W]e're not sure what all these records show, but what we're trying to determine is whether there was an actual diagnosis of schizoaffective disorder . . . . [B]ut for us to evaluate whether there is evidence there that could be useful to the defense, we'd like to review those—those medical records.

The state contends that the district court properly determined that Snoddy failed to make a plausible showing that the information was material and favorable to Snoddy's defense and that an isolated reference to a mental-health diagnosis in a non-medical record should not have enabled Snoddy to have access to L.J.'s medical records. We agree.

6

The district court denied Snoddy's motion for judicial subpoenas on the basis that Snoddy failed to make a showing that L.J.'s records contained material and favorable information that could be used at trial, noting that the "diagnosis" of schizoaffective disorder was not a fact but rather an allegation by someone in the child-protection section of the county attorney's office.

Following careful consideration, the district court stated:

> We've had many hearings on this case. The most recent was a—a detailed in camera inspection of the records, which I then did disclose. There is the references that you made to the schizoaffective disorder. It's not very clear at all. I know you know that and that's why you're asking for more. It's not clear at all whether the victim had—actually suffers from this disorder as a diagnosis, you know, and was on medication or who knows what.
>
> I also don't know—and I've read your—your—your request which defines schizoaffective disorder. I guess for purposes of this hearing I can take your word for it. I mean, we haven't had a hearing on what that even means, but your—your National Library of Medicine and National Institutes of Health definition is where you get your delusions and false beliefs and delusions, et cetera. I mean, again, like I said, I guess for purposes of this hearing, I'll take your word for it. I don't know if that's true or not.
>
> . . . [E]ven if this child has that diagnosis, it's a legitimate full-blown diagnosis, I wouldn't let you put that evidence in anyway because it would be probative—more prejudicial than probative because it would only be relevant in so far as this person is either a liar or not a liar because of a diagnosis or for any other reason, right? So if you have witnesses who want to get on the stand and say she's a liar and you can lay a proper foundation, you can do that under Rule 608, under Rule 405.
>
> . . . .

7

A diagnosis is irrelevant to that. Because either she has a diagnosis or she doesn't, and either her diagnosis leads to her making stuff up or being a liar or it doesn't. If it makes it more likely that she lies about stuff, then we'll know that—then you'll put that evidence in like you would any other witness regardless of diagnosis.

Because Snoddy failed to make a sufficient showing for an in camera review of L.J.'s medical records, we conclude that the district court properly exercised its discretion by denying his motion for judicial subpoenas.

**Affirmed.**