**Susan E. HEASLIP, Respondent,**

v.

**Elaine L. FREEMAN, Defendant,**

**Brian E. McLaughlin, et al., Respondents,**

**The Duluth News–Tribune, Appellant.**

**No. C8–93–1445.**

Court of Appeals of Minnesota.

Jan. 11, 1994.

Review Denied Feb. 24, 1994.

---

Kirk R. Linse, Hutchinson and Marquard, Duluth, for Susan E. Heaslip.

Christopher D. Robinson, Erik J. Askegaard, Askegaard Law Office, Brainerd, for Brian E. McLaughlin et al.

Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for appellant.

Considered and decided by LANSING, P.J., and PARKER and NORTON, JJ.

## OPINION

LANSING, Judge.

This case raises a question of statutory interpretation of the Minnesota Free Flow of Information Act, Minn.Stat. §§ 595.021–595.025 (1992). We read the disputed provision to create a nondisclosure privilege for unpublished information only when that information tends to identify a person or means through which the information was obtained. The subpoena duces tecum demanding unpublished photographs does not demand information that is privileged by the act, and we affirm.

## FACTS

The main action among Heaslip, Freeman, and the McLaughlins is for personal injuries sustained in a serial car accident on an icy Duluth road in December 1988. The McLaughlins' attorney purchased reprints of two photographs of the accident that were published by the Duluth News–Tribune. In a discussion with the newspaper photographer, the attorney learned that the photographer had taken other photographs which were not published. The newspaper stipulated that it has unpublished photographs of the accident.

When the newspaper refused to provide the McLaughlins with the unpublished photographs, the McLaughlins served a subpoena duces tecum demanding production of any photographs depicting the accident. The newspaper objected to the production of the unpublished material, claiming it was protected by the Minnesota Free Flow of Information Act. The McLaughlins brought a motion to enforce the subpoena and compel production of the photographs.

The district court ordered the newspaper to produce the photographs at the McLaughlins' expense and the newspaper appeals. As stated by the newspaper at oral argument in the district court, the newspaper does not claim to be protecting any sources, but is complying with a longstanding internal policy to release only published photographs.

## ISSUE

Does the Minnesota Free Flow of Information Act give the newspaper a privilege not to produce unpublished materials, even though the newspaper does not seek to protect any sources?

## ANALYSIS

■ The fundamental rule of statutory construction is that a court should look first to the specific statutory language and be guided by its natural and most obvious meaning. *Nadeau v. Austin Mut. Ins.*, 350 N.W.2d 368, 373 (Minn.1984) (statutes should be construed according to their plain and ordinary meaning); *see also* Minn.Stat. § 645.16 (1992) (when the words are clear and free from all ambiguity, the letter of the law shall not be disregarded). This tenet of plain meaning has as its corollary that ordinary rules of grammar apply. *Mattson v. Flynn*, 216 Minn. 354, 359, 13 N.W.2d 11, 14 (1944).

The essential question is the scope of the nondisclosure privilege the statute creates for unpublished information. Does the privilege attach to all unpublished information or only to unpublished information that tends to identify the person or means through which the information was obtained?

The operational section of the statute at issue provides that courts and other governmental entities shall not require members of the media who are directly engaged in news gathering

to disclose in any proceeding the person or means from or through which information was obtained, or to disclose any unpublished information procured by the person in the course of work *or* any of the person's notes, memoranda, recording tapes,

film or other reportorial data which would tend to identify the person or means through which the information was obtained.

Minn.Stat. § 595.023 (1992) (emphasis added).

The newspaper, relying on the italicized "or" in the third line, reads the operative provision to prohibit three kinds of compelled disclosures: (1) the person or means through which information was obtained; (2) unpublished information procured in the course of work; and (3) notes, memoranda, etc., which would identify the person or means through which information was obtained. The McLaughlins point to the absence of a comma before that same "or" and read the section as prohibiting only two types of compelled disclosure: (1) the person or means from or through which information was obtained; and (2) any unpublished information or notes, memoranda, etc. which would tend to identify the person or means through which the information was obtained.

The answer to the question of two or three categories turns on whether the final clause ("which would tend to identify the person or means through which the information was obtained") describes only the list that immediately precedes it (any of the person's notes, memoranda, recording tapes, film or other reportorial data) or whether it also limits the phrase "any unpublished information procured by the person in the course of work."

We are not persuaded that the absence of a comma means there are only two categories. This argument rests on a punctuation rule that requires a final comma to separate items in an enumerative series. *See, e.g., The Chicago Manual of Style* 143 (13th ed. 1982) ("In a series consisting of three or more elements, the elements are separated by commas."). Unfortunately, this is not an invariable rule of punctuation. *See, e.g., The New York Times Manual of Style and Usage,* 43 (Lewis Jordan ed. 1976) (indicating a comma ordinarily should not be used before *and* in a series). The statute's lack of a comma after "film" in the series beginning with "person's notes" indicates a punctuation style that does not place a comma after the final listed item preceding a conjunction.

The factor that tips the balance and makes it more likely that the words create only two types of privilege rather than three is the parallel construction of two of the elements starting with the words "to disclose" and the lack of this infinitive phrase after the "or" in question. The clause limiting the privilege to materials that tend to identify the source or means would then apply, as the McLaughlins argue, to unpublished information as well as notes, memoranda, etc. This plain reading would suggest that the privilege prohibits the court from requiring the media person to disclose a source or means or to disclose unpublished information (or notes, memoranda, etc.) that would tend to identify the source or means.

We acknowledge that this construction is finely tuned. Minnesota district courts have split on this issue. *See also State v. Brenner,* 488 N.W.2d 339, 341 (Minn.App.1992), *vacated on other grounds,* 497 N.W.2d 262 (Minn. 1993) (assuming the privilege applies only to confidential sources, but not discussing the statutory language at issue in this case). But even if we disregarded the grammatical construction and concluded that the statute was ambiguous, an analysis of the statute's purpose and legislative history would lead to the same result.

The statute identifies the public policy that supports the act:

> In order to protect the public interest and the free flow of information, the news media should have the benefit of a substantial privilege not to reveal sources of information or to disclose unpublished information. To this end, the freedom of press requires protection of the confidential relationship between the news gatherer and the source of information. The purpose of sections 595.021 to 595.025 is to insure and perpetuate, consistent with the public interest, the confidential relationship between the news media and its sources.

Minn.Stat. § 595.022 (1992).

The newspaper focuses on the first sentence of this section. We agree that this sentence, read separately, could support both a privilege not to reveal sources of information and a privilege not to disclose unpub-

lished information whether or not the information was confidential. The remaining text in the section, however, ties the unpublished information to the confidential relationship between the news media and its sources. Taking the section as a whole, the privilege not to disclose unpublished information appears to relate to unpublished information that would identify a source. *See Christensen v. Department of Conservation, Game and Fish,* 285 Minn. 493, 499–500, 175 N.W.2d 433, 437 (1970) (stating the long-standing proposition that statutes must be construed as a whole and that meaning should be ascertained from context).

The unity of the confidential relationship and the unpublished materials is supported by legislative history. At a full Judiciary Committee hearing the bill's author, Senator Humphrey, explained:

> [T]he question is raised primarily because of a recent Supreme Court decision which states that there is no constitutional right or protected privilege from disclosure of sources of information for reporters and those involved in gathering information for the news media. The effect of this bill would be to provide that no person engaged in gathering news for publication or dissemination shall be required to disclose his sources of information. In effect the bill grants a limited privilege of non-disclosure.

*Hearing on S.F. No. 622 Before the Senate Judiciary Committee* (Apr. 12, 1973).

■■■ In light of the statute's specific provisions and the consistent statement of policy and its legislative history, we conclude that the act does not protect unpublished information that does not protect a source. On this interpretation we agree that it was within the district court's discretion to compel production of the unpublished photographs.

We emphasize that the issue presented in this appeal is solely an issue of statutory construction. The newspaper and the McLaughlins have not raised state or federal constitutional issues. We note that at least one state court has interpreted federal and state constitutional provisions to extend a privilege to unpublished photographs whether or not the information is confidential. *See*

*O'Neill v. Oakgrove Constr.,* 71 N.Y.2d 521, 529, 528 N.Y.S.2d 1, 4, 523 N.E.2d 277, 280 (1988). Several federal circuit courts have also interpreted the constitution to apply a journalist's privilege to resource materials even in the absence of elements of confidentiality. *See, e.g., Shoen v. Shoen,* 5 F.3d 1289, 1295 (9th Cir.1993) (privilege applies to resource materials even when not protecting confidentiality); *von Bulow v. von Bulow,* 811 F.2d 136, 142 (2nd Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987) (the relationship between the journalist and a source does not need to be confidential for the purposes of the privilege). *But see Branzberg v. Hayes,* 408 U.S. 665, 698–99, 92 S.Ct. 2646, 2665, 33 L.Ed.2d 626 (1972) (recognizing state legislatures' power to fashion shield laws but declining to identify a first amendment right, arising from receipt of confidential information, for journalist to refuse to answer questions during a grand-jury investigation).

Constitutional arguments are indirectly implicated by the canon of statutory construction stating that the legislature does not intend to violate the United States or Minnesota Constitution. Minn.Stat. § 645.17, subd. 3 (1992). But in light of the parties' specific decision not to raise constitutional arguments, we do not address the constitutionality of the statute in this opinion. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

## DECISION

The Minnesota Free Flow of Information Act prohibits disclosure of unpublished information that tends to identify the person or means through which the information was obtained.

**Affirmed.**