STATE of Minnesota, Respondent,

v.

Kieran Frazier KNUTSON, Defendant,

Minnesota Daily on behalf of
Jesse Rosen, Appellant.

No. C8–94–1312.

Court of Appeals of Minnesota.

Nov. 15, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, for the State of Minn.

Keith Ellison, Legal Rights Center, Minneapolis, for Kieran Frazier Knutson.

Marshall H. Tanick, Teresa J. Ayling, Mansfield & Tanick, P.A., Minneapolis, for Minnesota Daily on behalf of Jesse Rosen.

Considered and decided by HUSPENI, P.J., and FORSBERG, and DAVIES, JJ.

## OPINION

DAVIES, Judge.

*The Minnesota Daily* (*Daily*) appeals the denial of its motion to quash a subpoena of its reporter, arguing that (1) the Minnesota Reporters Shield Law protects the reporter from testifying regarding a crime witnessed while covering a story, (2) the Constitution affords a privilege not to testify, and (3) the district court erred in ruling that he waived his privilege. We affirm.

## FACTS

In October 1993, the Progressive Students Organization held a rally on the University of Minnesota campus to oppose an anticipated rally by "neo-Nazis." The *Daily* assigned reporter Jesse Rosen to cover the events. As Daniel Simmer and his fiance approached the rally site, the two were confronted by a group of people who apparently considered Simmer a neo-Nazi.[1] A conflict ensued and Simmer was injured. Rosen witnessed the assault. The *Daily* later published an article, co-written by Rosen, on the rallies and the assault.

When police interviewed Rosen about the incident, he identified Kieran Knutson as the probable assailant. Knutson subsequently was charged with two counts of felony assault. The state served Rosen with a subpoena requiring him to testify at Knutson's

---

1. At oral argument it was suggested that this was a mistaken impression.

trial.[2] The state also served Pamela Louwagie, the *Daily*'s editor-in-chief, with a subpoena for all unpublished photographs that the *Daily* took at the incident.

The *Daily* moved to quash both subpoenas. The district court granted the motion with respect to the subpoena served on Louwagie, but denied the motion with respect to Rosen. The court concluded that Rosen had (by participating in the police interview) waived any privilege he might have had. The court thus did not address whether either the Reporters Shield Law or the Constitution afforded Rosen a privilege. The *Daily* now appeals the denial of its motion to quash the Rosen subpoena. The subpoena served on Louwagie is not at issue in this appeal.

## ISSUES

I. Does the *Minnesota Daily* have standing to challenge a subpoena served on one of its reporters?

II. Does the Minnesota Reporters Shield Law provide a reporter with a privilege not to testify regarding the events he witnessed relating to an alleged crime?

III. Does the Constitution provide a reporter with a privilege not to testify regarding the events he witnessed relating to an alleged crime?

## ANALYSIS

The district court ruled that Rosen waived whatever privilege he might have had, viewing that waiver as dispositive. We choose to resolve the case, instead, on the basis of privilege. We affirm on the ground that Rosen had no statutory or constitutional privilege. *See Schweich v. Ziegler, Inc.,* 463 N.W.2d 722, 728 (Minn.1990) (affirming correct decision on different reasoning).

### I. Standing

The threshold issue is whether the *Minnesota Daily* has standing to challenge

the subpoena requiring Rosen to testify. The standing requirement of a genuine dispute between the parties ensures that the issues are properly and competently presented to the court. *Twin Ports Convalescent, Inc. v. Minnesota State Bd. of Health,* 257 N.W.2d 343, 346 (Minn.1977).

Generally, a party who has suffered an "injury in fact" has standing. *Byrd v. Independent Sch. Dist. No. 194,* 495 N.W.2d 226, 231 (Minn.App.1993), *pet. for rev. denied* (Minn. Apr. 20, 1993). A party must have more than an abstract concern and the injury must not be merely speculative. *Id.*

"[A]n organization may have standing to assert claims arising from direct injury to its members' interests." *Minnesota Educ. Ass'n v. Independent Sch. Dist. No. 404,* 287 N.W.2d 666, 669 (Minn.1980). But the *Daily* is not an organization whose purpose is to represent its individual members' interests; rather, the *Daily*'s relationship with Rosen is one of employer-employee. Nevertheless, although not all employers necessarily derive standing from their employees, we hold that a *media* employer's interest in the subpoena of one of its reporters is sufficient to give the *Daily* standing.

Alternatively, standing may be conferred by statute. *Regency Condo. Ass'n v. State (In re Objections to Real Prop. Taxes),* 410 N.W.2d 321, 322 (Minn.1987). Here, the statutory language of Minn.Stat. § 595.022 (1992) (referring broadly to "news media" and "news gatherer") and Minn.Stat. § 595.023 (1992) (referring to persons "directly engaged in the gathering, procuring, compiling, editing or publishing of information") suggests that the legislature implicitly extended standing to media employers. We thus conclude that the *Daily* has standing to challenge the Rosen subpoena at least derivatively, if not directly.[3]

---

2. Although the record does not contain a copy of the subpoena served on Rosen, the district court's memorandum states that "Rosen received a subpoena to testify at the trial." Accordingly, for purposes of this appeal we assume that the subpoena required Rosen only to testify at trial regarding his personal observations of the assault, not to disclose any sources for his article.

3. Respondent relies on *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), for the proposition that only the reporter, rather than the reporter's newspaper, has standing. But the Court there simply stated that the constitutional privilege is that of the reporter, not the *source. Id.* at 695, 92 S.Ct. at 2664. The Court thus was addressing who—between the reporter

## II. Statutory Privilege

■ The construction of a statute is a question of law and therefore fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Emp. Rel. Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

■ The Minnesota Reporters Shield Law provides that the government may not compel any member of the media to disclose

> the person or means from or through which information was obtained, or to disclose any * * * reportorial data which would tend to *identify the person* or means *through which* the information was *obtained.*

Minn.Stat. § 595.023 (1992) (emphasis added). Section 595.023 only prohibits compelled direct or indirect disclosure of sources. *Heaslip v. Freeman*, 511 N.W.2d 21, 24 (Minn.App.1994), *pet. for rev. denied* (Minn. Feb. 24, 1994). Thus, the statute does not apply where, as here, the unpublished information would not identify a source.

The statute's public policy provision states, in part, that

> [i]n order to protect the public interest and the free flow of information, the news media should have the benefit of a substantial privilege not to reveal sources of information *or to disclose unpublished information.*

Minn.Stat. § 595.022 (1992) (emphasis added). The *Daily,* focusing on the last clause, argues that this public policy provision accords the media a broad privilege not "to disclose unpublished information." But a fair reading of both the operative portion of the section and the section's legislative history indicates that the statute only protects reporters from compelled disclosures that would identify their sources. *Heaslip,* 511 N.W.2d at 24. Thus, it does not apply here because no source—much less any confidential source—is at risk.

The *Daily* argues that *Heaslip* does not apply to criminal cases. But the statute itself does not differentiate between civil and criminal cases in terms of its applicability.

The *Daily* also argues that section 595.024, providing for an exception to the general prohibition against compelled disclosure, refers only to criminal proceedings. But Rosen does not enjoy any privilege under section 595.023 in the first instance, regardless of whether section 595.024 applies only in criminal cases. Furthermore, even if the exception only required disclosure in criminal actions, then the statute would provide less protection of the media in criminal actions, not more.

Accordingly, we conclude that the Reporters Shield Law does not apply where, as here, no source is at risk and the reporter would testify regarding events personally witnessed.

■ Furthermore, even if the Reporters Shield Law did apply here, we believe that the state could compel Rosen's testimony under section 595.024. This section generally provides for the disclosure of information relevant to a felony if (1) it cannot be obtained by any alternative means and (2) there is a compelling and overriding interest requiring disclosure to prevent injustice. Minn.Stat. § 595.024 (1992).

The *Daily* argues that section 595.024 does not apply here because the state has abundant alternative means to obtain evidence from numerous other witnesses. But the existence of additional witnesses does not provide a sufficient basis to excuse Rosen from testifying. The evidence surrounding the assault is largely testimonial. Witness testimony involves a credibility determination by the fact-finder. There is no guarantee that the jury would accept the testimony of the other witnesses. It was dark when the incident occurred and some of the witnesses are potentially biased. Finally, while Rosen's statement suggests that Knutson assaulted Simmer without provocation or a need for self-defense, some of the other witnesses suggest that it may have been Knutson who acted in self-defense. Thus, recognizing a privilege under these facts might

and the source—held standing in the first instance, rather than whether the paper could de-

rive standing from its reporters.

shift the weight of the evidence, not just bar superfluous testimony.

For much the same reasons, there is a compelling and overriding interest in obtaining Rosen's testimony. Allowing Rosen not to testify would eliminate important evidence concerning an alleged criminal assault. This would plainly constitute an injustice within the contemplation of the statute.

### III. Constitutional Privilege

The *Daily* argues that the First Amendment affords Rosen a privilege not to testify, citing various cases purporting to recognize a privilege even when the reporter's source was not confidential.[4] But the "Constitution does not immunize [a reporter] from testifying merely because he makes the observation as a news reporter." *In re Ziegler,* 550 F.Supp. 530, 532 (W.D.N.Y.1982). "A reporter, the same as any other citizen, must testify before the Grand Jury as to what he has personally observed." *Id.; accord Dillon v. City of San Fran.,* 748 F.Supp. 722, 726 (N.D.Cal.1990) (no privilege "simply because the eyewitness is a journalist"); *Miller v. Mecklenburg County,* 602 F.Supp. 675, 679 (W.D.N.C.1985) (same).

We hold that Rosen has no constitutional privilege not to testify regarding his personal observation of an assault.

### DECISION

Neither the Minnesota Reporters Shield Law nor the Constitution provide Rosen a privilege not to testify regarding events he personally witnessed while covering a story.

**Affirmed.**

---

4. The *Daily* does not claim greater protection     under the state constitution.