STATE of Minnesota, Respondent,

v.

Kieran Frazier KNUTSON, Respondent,

v.

MINNESOTA DAILY, Appellant.

No. C8–95–1093.

Court of Appeals of Minnesota.

Oct. 31, 1995.

Hubert H. Humphrey, III, Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Asst. County Attorney, Minneapolis, for State.

Keith Ellison, Minneapolis, for Kieran Frazier Knutson.

Marshall H. Tanick, Teresa J. Ayling, Mansfield & Tanick, P.A., Minneapolis, for Minnesota Daily.

Considered and decided by WILLIS, P.J., and HUSPENI and THOREEN*, JJ.

## OPINION

HUSPENI, Judge.

The district court granted appellant newspaper's motion to quash the subpoena of its unpublished photographs. Respondent State of Minnesota moved successfully for reconsideration; the district court then ordered the photographs produced for in camera inspection. The newspaper appeals from that order. Because we find no error in the district court's refusal to quash the subpoena of the newspaper's unpublished photographs, we affirm.

## FACTS

On October 22, 1993, a rally on the University of Minnesota campus broke into an altercation during which respondent Kieran Knutson[1] allegedly struck Daniel Simmer. Knutson was charged with two felony counts of assault. Simmer was subsequently taken into custody by the police; he was cited for disorderly conduct and a weapons violation, because brass knuckles were found in his pocket. While some eyewitnesses of the event report that Simmer was wearing brass knuckles during his confrontation with Knutson, others do not mention brass knuckles.

Appellant Minnesota Daily newspaper (the Daily) had photographers and reporters, among them Jesse Rosen, covering the rally.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Knutson has taken no part in this appeal.

The Daily subsequently published Rosen's story of the event.

On the day scheduled for Knutson's trial, the State issued subpoenas for Rosen and for the Daily's unpublished photographs. The Daily moved to quash both subpoenas. On June 20, 1994, the district court denied the motion to quash Rosen's subpoena but granted the motion to quash the subpoena of the photographs. The Daily appealed on the issue of the Rosen subpoena; this court affirmed. *State v. Knutson*, 523 N.W.2d 909 (Minn.App.1994), *review denied* (Minn. Jan. 13, 1995) (*Knutson I* ).

On August 12, 1994, while the Rosen subpoena issue was on appeal, the district court granted the state's motion to reconsider the quashing of the subpoena of the photographs and ordered the photographs produced for in camera inspection. The Daily appealed from that order, arguing that the district court lacked jurisdiction to reconsider one part of the June 20, 1994, order while another part of that order was being appealed. This court agreed with the Daily and reversed and remanded "without any limitation on the state's ability to bring a new motion for reconsideration." *State v. Knutson,* No. C7–94–1737, 1995 WL 34812 (Minn.App. Jan. 31, 1995) (*Knutson II* ). In response to the state's second motion for reconsideration, the district court on April 27, 1995, again ordered the photographs to be produced for in camera inspection.

## ISSUE

Did the district court err in denying a motion to quash a prosecutor's subpoena of a newspaper's unpublished photographs?

## ANALYSIS

The Daily argues that the photographs are protected by Minn.Stats. §§ 595.021 to 595.025 (1994), the Free Flow of Information Act, also called the Reporters' Shield Law, and by the First Amendment. We cannot agree.

■ "The construction of a statute is a question of law and therefore fully reviewable by an appellate court." *Knutson I,* 523 N.W.2d at 912 (citing *Hibbing Educ. Ass'n v. Public Emp. Rel. Bd.,* 369 N.W.2d 527, 529 (Minn.1985)). The district court based the order now on appeal on *Knutson I,* which held that

> the Reporters Shield Law does not apply where, as here, no source is at risk and the reporter would testify regarding events personally witnessed. * * * Rosen has no constitutional privilege not to testify regarding his personal observation of an assault. * * * Neither the Minnesota Reporters Shield Law nor the Constitution provide Rosen a privilege not to testify regarding events he personally witnessed while covering a story.

*Id.* at 912–13.

The Daily argues that the district court was not justified in regarding *Knutson I* as dispositive of this case, given the different facts. We agree. *Knutson I* holds only that the qualified privilege does not extend to the testimony of eyewitnesses; it does not address the application of the privilege to unpublished photographs.[2]

■ This court did address compelling the production of unpublished photographs in *Heaslip v. Freeman,* 511 N.W.2d 21 (Minn. App.1994), *review denied* (Minn. Feb. 24, 1994). In *Heaslip,* as here, a newspaper's refusal to produce unpublished photographs was not based on protecting a source. The newspaper in *Heaslip* invoked Minn.Stat. § 595.022 (1992), which reads:

> In order to protect the public interest and the free flow of information, the news media should have the benefit of a substantial privilege not to reveal sources of information or to disclose unpublished information. To this end, the freedom of press requires protection of the confidential relationship between the news gatherer and the source of information. The purpose of sections 595.021 to 595.025 is to insure and perpetuate, consistent with the public interest, the

---

2. *Knutson I* does state that "Section 595.023 only prohibits compelled direct or indirect disclosure of sources" and that "the statute does not apply where, as here, the unpublished informa-

tion would not identify a source." *Knutson I,* 523 N.W.2d at 912. However, these statements are dicta; the decision in *Knutson I* pertained only to the subpoena of the reporter.

confidential relationship between the news media and its sources.

*Heaslip* construed the statute:

[The first] sentence, read separately, could support both a privilege not to reveal sources of information and a privilege not to disclose unpublished information whether or not the information was confidential. The remaining text in the section, however, ties the unpublished information to the confidential relationship between the news media and its sources. Taking the section as a whole, the privilege not to disclose unpublished information appears to relate to unpublished information that would identify a source.

*Id.* at 23–24. *Heaslip* thus limits the shield law to protecting unpublished material that would identify sources.

The holding in *Heaslip,* however, does not resolve entirely the issue raised by the Daily, which claims not only statutory but also constitutional protection.[3] The Daily argues that the photographs are protected constitutionally by a qualified "journalist's privilege."[4] The eighth circuit is among those that have interpreted *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) to confer such a privilege. *See Cervantes v. Time, Inc.,* 464 F.2d 986, 992–93 & n. 9 (8th Cir.1972), *cert. denied* 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973); *see also Shoen v. Shoen,* 5 F.3d 1289, 1293 (9th Cir.1993) (stressing that the privilege is qualified: "the claimed First Amendment privilege and the opposing need for disclosure [must] be judicially weighed in light of the surrounding facts, and a balance struck to determine where lies the paramount interest").

Some circuits interpreting *Branzburg* to confer a qualified journalist's privilege have specified in camera review as an appropriate means of striking this balance between the first amendment privilege and the need for disclosure. *See Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 598 (1st Cir.1980) (ordering in camera production of a reporter's notes suggested as appropriate where court was in doubt as to relevance of privileged materials); *United States v. Burke,* 700 F.2d 70, 78 n. 9 (2d Cir.1983) (encouraging court to undertake in camera review of potentially sensitive documents when there are reasonable grounds to believe the documents would yield probative evidence) *cert. denied* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *United States v. Cuthbertson,* 630 F.2d 139, 148 (3rd Cir.1980) (district court properly ordered CBS to produce statements made by persons on the government's witness list for in camera review), *cert. denied* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). The order of the trial court here is consistent with the rationale of these federal cases.

While there is no Minnesota appellate case law addressing the appropriateness of in camera review in cases involving a journalist's claimed right to nondisclosure,[5] in a

---

3. While we find *Heaslip* non-dispositive in that it does not address all the issues raised by the Daily, we reject the Daily's attempts to distinguish it on the grounds that the underlying action in *Heaslip* involved a routine personal injury case while here the underlying action is "volatile and emotional," and that the subpoena in *Heaslip* would have had no effect on photographers or photographic subjects while the subpoena here will render the Daily's photographers less assertive and its potential photographic subjects leery and reluctant. The Daily offers nothing to show that those who took the photographs sought by the state can even be identified, much less implicated in the underlying action, or that their subjects had to give permission to be photographed. It would seem reasonable to believe that those who engage in rallies on the university campus have as their avowed objective attracting publicity, not avoiding it.

4. In its brief, the Daily observes that "Compelling production of unpublished photographs in criminal cases 'would set a dangerous precedent with grave implications for the First Amendment'" and cites *U.S. v. McGoldrick,* 796 F.Supp. 178, 180 (E.D.Pa.1992) for this proposition. However, the language quoted from *McGoldrick* applies not to unpublished photographs but to the practice of issuing a subpoena to a nationally-known journalist based on no more than the appearance of a news article by that journalist.

5. This court did in fact address the appropriateness of in camera review of materials subject to the journalist's privilege in *State v. Brenner,* 488 N.W.2d 339 (Minn.App.1992). That case, however, was subsequently vacated by an order opinion, *State v. Brenner,* 497 N.W.2d 262 (Minn. 1993), "because there is no underlying criminal prosecution and the issue addressed and decided

somewhat analogous situation Minnesota courts have repeatedly held in camera review appropriate when a victim's right to confidentiality conflicts with a defendant's right to confront the accuser or procure all possibly exculpating evidence.

> The in camera approach strikes a fairer balance [than allowing opposing counsel access to allegedly confidential materials] between the interest of the privilege holder in having his confidences kept and the interest of the [litigant] in obtaining all relevant evidence * * *. We believe that trial courts, who by training and experience are qualified for the task of determining matters of relevance, are capable of determining what if any of the [privileged] information in the records might help * * *. Further, we note that the determination, like any other determination by the trial court, is subject ultimately to judicial review.

*State v. Paradee,* 403 N.W.2d 640, 642 (Minn. 1987) (reversing decision that defense counsel be given access to victim's medical records and remanding for in camera review of the records). *See also State v. Kutchara,* 350 N.W.2d 924, 926 (Minn.1984) (upholding trial court's in camera review of victim's prior medical records and its refusal to make those records available to defendant); *State v. Harmening,* 376 N.W.2d 254, 258–59 (Minn. App.1985) (upholding in camera review of victim's medical records), *review denied* (Minn. Dec. 13, 1985); *State v. Hopperstad,* 367 N.W.2d 546, 549 (Minn.App.1985) (reversing trial court's ruling that statements of police officers were not discoverable and remanding for in camera review; "we hold that it is the trial court's duty to review the file in camera").

■ Since there is a likelihood that a photograph will provide conclusive information as to whether Simmer was wearing brass knuckles at the time of Knutson's assault, a need for disclosure is demonstrated. While the Daily's claim of privilege is supported by general statements that journalists do not want to be subject to subpoena, the Daily does not specifically state why these particular photographs should be protected. "[T]he by the court of appeals is therefore moot." *Id.* at 263.

First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability." *Branzburg,* 408 U.S. at 682, 92 S.Ct. at 2657.

■ The Daily also claims protection under Minn.Stat. § 595.024, subd. 2 (1994), providing that disclosure can be compelled only if the court has determined:

> (1) that there is probable cause to believe that the source has information clearly relevant to a specific violation of the law other than a misdemeanor,
>
> (2) that the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights, and
>
> (3) that there is a compelling and overriding interest requiring the disclosure of the information where the disclosure is necessary to prevent injustice.

We find that the Daily's reliance on this statutory provision is misplaced, since the order to produce the unpublished photographs for in camera review meets these criteria. The photographs are relevant to a felony. Photographs may provide more accurate information than conflicting eyewitness accounts as to whether Simmer was wearing brass knuckles. Knutson's argument that his assault of Simmer was in self-defense could depend on this information. The Daily argues that there are "alternative sources" because the photographers had no information not available to other eyewitnesses. The photographers, however, used an objective means of recording that information. It is that objective record, not the photographers' eyewitness impressions, that the subpoena seeks.

The Daily ignores the district court's August 12, 1994, order compelling production of the photographs for in camera inspection in arguing that the court's excessive reliance on *Knutson I* in its April 27, 1995, order means that the June 20, 1994, order quashing the subpoena of the photographs should be reinstated. We disagree. The district court itself determined that the June 20, 1994, order

259

should be reconsidered, and after reconsideration issued its August 12, 1994, order, compelling production of the photographs for in camera review. This decision of the district court violates neither the relevant Minnesota statutes nor the qualified constitutional privilege granted to the media.

## DECISION

Neither the qualified constitutional privilege extended to the media nor the Minnesota shield law precludes producing unpublished photographs for in camera inspection.

**Affirmed.**