488 S.E.2d 5

STATE of West Virginia ex rel. The CHARLESTON MAIL ASSOCIATION and The Daily Gazette Company, Relators,

v.

Honorable Lyne RANSON, Judge of the Circuit Court of Kanawha County; William C. Forbes, Prosecuting Attorney for Kanawha County; and Frank E. West, Respondents.

No. 23873.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 1997.

Decided March 14, 1997.

James K. Brown, Jackson & Kelly, Charleston, for Relator, The Charleston Mail Association.

Rudolph L. DiTrapano, Sean P. McGinley, DiTrapano & Jackson, Charleston, for Relator, The Daily Gazette Company.

J.C. Powell, Powell Law Offices, Charleston, for Respondent, Frank E. West.

DAVIS, Justice:

In this original proceeding for a writ of prohibition, the relators, the Charleston Mail Association and the Daily Gazette Company, request that we vacate an order entered November 7, 1996, by the respondent judge, the Honorable Lyne Ranson, of the Circuit Court of Kanawha County. The order denied the relators' motions to quash subpoenas *duces tecum* in which respondent Frank E. West requested photographs of a crime scene taken by the relators' photographers. The relators request that we find they have a reportorial privilege that would preclude disclosure of the photographs to West for his use in his criminal trial. We issued a rule to show cause and now grant as moulded the writ of prohibition.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts of the instant case relate to the October, 1995, death of a Charleston, West Virginia, educator and the burning of his home. At the time of these incidents, the Charleston Mail Association [hereinafter Daily Mail], publisher of *The Charleston Daily Mail,* and the Daily Gazette Company [hereinafter Charleston Gazette], publisher of *The*

*Charleston Gazette,* both published articles about the events and photographs of the crime scene.[1] In April, 1996, a Kanawha County grand jury returned an indictment charging Frank E. West with first degree murder and arson in relation to the educator's death.

Following his indictment, West served, on April 12, 1996, a subpoena *duces tecum* on each of the newspapers requesting their respective custodians of photographs to testify and to produce "copies of any and all photos of the arson homicide[.]" The Charleston Gazette filed a motion to quash the subpoena on April 17, 1996, asserting a reportorial privilege and arguing that "the defendant [West] has failed to establish the prerequisites for compelling a newspaper to produce documents relating to its news-gathering activities." Likewise, the Daily Mail filed a motion to quash the subpoena on April 19, 1996, claiming "a reporters [*sic*] privilege preclud[ed] its being required to appear and testify as a witness and/or produce photographs as commanded by the aforesaid subpoena unless ordered to do so by a court of competent jurisdiction upon a showing of sufficient cause as required by law." West filed a "Memorandum for Production of News Information," on April 30, 1996, claiming that his right to a fair trial outweighed any privilege asserted by the newspapers. Furthermore, West contended that "[t]here may be exculpatory information contained in the

newspapers' photographs not accessible elsewhere. The Defendants [*sic*] [West] contend [*sic*] that the newspapers' photographs may have been taken from a different angle from other photographs which would show evidence that would not be available anywhere else." [2]

The Honorable Lyne Ranson, Judge of the Circuit Court of Kanawha County, held hearings on this matter and reviewed *in camera* the requested photographs. By letter decision dated May 28, 1996, Judge Ranson found that "the movant [the Charleston Gazette] has sufficiently met the criteria of the *Subpoena Duces Tecum* in this case." [3] Judge Ranson issued a similar letter decision dated September 25, 1996, finding the Daily Mail had also complied with the requirements of the subpoena. Without rendering specific findings of fact or conclusions of law, Judge Ranson, by final order entered November 7, 1996, "ORDERED that the aforesaid motions to quash are denied and the movants [Charleston Gazette and Daily Mail] are each ORDERED to comply with the *subpoena duces tecum* served upon them." [4]

In response to Judge Ranson's ruling, the Daily Mail and the Charleston Gazette petition this Court for a writ of prohibition and request us to determine whether their photographs are protected by a reportorial privilege.[5]

---

1. Specifically, the *Charleston Daily Mail* story and photograph ran on October 4, 1995, and the *Charleston Gazette* story and photograph ran on October 5, 1995.

2. In his memorandum submitted to the circuit court, West also asserted his entitlement to additional information in the possession of the newspapers, including "tape recordings [of interviews] of the police officers regarding this case." Respondent West also alludes to the possible existence of exculpatory information, separate and apart from the unpublished photographs, in his response to the relators' "Joint Petition for Writ of Prohibition" filed with this Court. However, because the subpoenas requested only the newspapers' unpublished photographs, and did not seek any other type of information, our review of this case necessarily is limited to West's request for production of the photographs.

3. Despite the relators' interpretation to the contrary, we understand the circuit court's order as signifying that the relator newspapers, who had

moved to quash the respondent's subpoenas *duces tecum,* had satisfied the requirements of the subpoenas by providing their unpublished photographs to Judge Ranson for *in camera* review.

4. West represents that respondent William C. Forbes, Prosecuting Attorney for Kanawha County, testified at the hearing before Judge Ranson that the photographs taken by the newspapers "may contain information not depicted in police photographs." In spite of this assertion, the record indicates that neither West nor Forbes actually has examined the photographs in question because they were sealed following Judge Ranson's *in camera* review.

5. The criminal trial of West, originally scheduled to begin on December 2, 1996, has been continued until April 14, 1997.

## II.

## DISCUSSION

The crux of the parties' argument is the extent to which our prior decision of *State ex rel. Hudok v. Henry,* 182 W.Va. 500, 389 S.E.2d 188 (1989), in which we recognized a news reporter's privilege with respect to an administrative hearing, applies in the context of a criminal case. Following a brief discussion of the appropriate standard of review, we will determine the applicability of a reportorial privilege to the facts presently before us.

### A.

### Standard of Review

■ Prior to reaching the merits of the relator newspapers' contentions, we must first determine whether prohibition is appropriate in the instant case. "The rationale behind a writ of prohibition is that by issuing certain orders the trial court has exceeded its jurisdiction, thus making prohibition appropriate." *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 36, 454 S.E.2d 77, 81 (1994) (Cleckley, J., concurring). As such, "writs of prohibition ... provide a drastic remedy to be invoked only in extraordinary situations." 193 W.Va. at 37, 454 S.E.2d at 82. More specifically,

> "this Court will use prohibition ... to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

Syl. pt. 1, in part, *State ex rel. DeFrances v. Bedell,* 191 W.Va. 513, 446 S.E.2d 906 (1994) (quoting Syl. pt. 1, in part, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979)).

■ Applying this standard to the facts presently before us, we find that prohibition is appropriate in this instance. Respondent West asserts that the unpublished photographs he seeks from the relators may contain exculpatory evidence which he may or may not choose to introduce at his criminal trial. Hence, because the relators have no other remedy, prohibition is an appropriate method by which the relators may request this Court to correct any errors they assert with respect to the circuit court's order requiring them to disclose their unpublished photographs to respondent West prior to the trial of this case.

### B.

### Applicability of Reportorial Privilege to Criminal Proceedings

In our prior decision of *State ex rel. Hudok v. Henry,* 182 W.Va. 500, 389 S.E.2d 188 (1989), we recognized the existence of a reportorial privilege in the context of an administrative hearing. The underlying facts of *Hudok* centered around the discharge of Linda Butner from her position as clerk of the Magistrate Court of Jefferson County. In April, 1989, Ms. Butner was interviewed by newspaper reporter Ron Hudok with respect to a search, pursuant to a search warrant, of her home.[6] Approximately one month later, Ms. Butner was placed on administrative leave and was interviewed by another newspaper reporter, Beth Traubert. 182 W.Va. at 501, 389 S.E.2d at 189. The second published interview recounted Ms. Butner's appearance at a meeting of the Jefferson County Commission at which time she complained that "the sheriff was attempting to set her up as a drug pusher." *Id.* On June 6, 1989, the Honorable Thomas W. Steptoe, Jr., Judge of the Circuit Court of Jefferson County, discharged Ms. Butner; she thereafter requested an administrative hearing to protest her firing. 182 W.Va. at 501–02, 389 S.E.2d at 189–90. During an evidentiary hearing, Judge Steptoe subpoenaed both newspaper reporters and a radio reporter, Natasha Singh,[7] in support of his decision to remove Ms. Butner from her position as Magistrate

---

6. It seems that Ms. Butner's husband previously had been "arrested for cultivating marijuana," and she apparently perceived the search as improperly implicating her in connection with her husband's illegal activities. 182 W.Va. at 501, 389 S.E.2d at 189.

7. At some point during the above-described events, radio reporter Singh interviewed Ms.

Court clerk. 182 W.Va. at 502, 389 S.E.2d at 190. Ms. Traubert was subsequently released from her subpoena, but reporters Hudok and Singh both refused to respond to questioning, each asserting a "First Amendment news-gathering privilege." *Id.* The reporters, having been held in civil contempt for their refusal to testify, applied to this Court for a determination of the validity of their asserted privilege. *Id.*

Deciding that such a news-gathering privilege does exist in West Virginia, we noted the decision of the United States Supreme Court in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Although the *Branzburg* Court concluded that a reporter could not claim such a privilege upon being subpoenaed to appear before a grand jury, the accompanying concurring opinion and dual dissenting opinions have since been construed by other courts as suggesting that a qualified news reporter's privilege does exist outside of the facts presented in *Branzburg.* *See, e.g., In Re Petroleum Prod. Antitrust Litig.,* 680 F.2d 5 (2d Cir.) (per curiam) (reportorial privilege may be asserted in response to court-ordered disclosure of confidential news sources), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); *United States v. Cuthbertson (Cuthbertson I),* 630 F.2d 139 (3d Cir.1980) (reportorial privilege may be asserted in response to subpoena *duces tecum* ), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *O'Neill v. Oakgrove Constr., Inc.,* 71 N.Y.2d 521, 523 N.E.2d 277, 528 N.Y.S.2d 1 (1988) (reportorial privilege may be asserted in response to court-ordered disclosure of nonconfidential news information (photographs)).

■ Consistent with other jurisdictions recognizing such a privilege, we held, in Syl-

labus Point 1, that a reportorial privilege exists in West Virginia:

> To protect the important public interest of reporters in their news-gathering functions under the First Amendment to the United States Constitution, disclosure of a reporter's confidential sources or news-gathering materials may not be compelled except upon a clear and specific showing that the information is highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources.

*Hudok,* 182 W.Va. 500, 389 S.E.2d 188. We further adopted "the general rule ... that a qualified First Amendment privilege is available to the news-gathering material whether confidential, published, or not published." 182 W.Va. at 505, 389 S.E.2d at 193. Based upon this decision, we overturned the reporters' contempt citations. *Id.*

Notwithstanding our decision in *Hudok* establishing a reportorial privilege in this State, the case presently before us is factually distinguishable. While *Hudok* involved an administrative hearing, the instant petition concerns proceedings preliminary to a criminal trial. Given this procedural posture, we note at the outset the competing constitutional protections implicated in this case. On the one hand, the First Amendment to the United States Constitution and Section 7 of Article III of the West Virginia Constitution guarantee freedom of speech and press.[8] On the other hand, the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution ensure that a criminal defendant will have a fair trial.[9]

■ The United States Supreme Court has addressed these competing interests and

Butner; however, this interview was never aired or published in any way. 182 W.Va. at 502, 389 S.E.2d at 190.

**8.** The First Amendment to the United States Constitution provides, in pertinent part: "Congress shall make no law ... abridging the freedom of speech, or of the press[.]" Similarly, West Virginia Constitution Article III, Section 7, directs, in relevant part: "No law abridging the freedom of speech, or of the press, shall be passed[.]"

**9.** Amendment VI to the United States Constitution secures the right of a criminal defendant to a fair trial:

> *In all criminal prosecutions, the accused shall enjoy the right* to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him;*

has determined that both the right to a free press and the right to a fair trial are equally important:

> The authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, ranking one as superior to the other.... [I]f the authors of these guarantees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for us to rewrite the Constitution by undertaking what they declined to do. It is unnecessary, after nearly two centuries, to establish a priority applicable in all circumstances.

*Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 561, 96 S.Ct. 2791, 2803–04, 49 L.Ed.2d 683, 699 (1976). That is not to say, however, that:

> [a] defendant's sixth amendment and due process rights ... are ... irrelevant when a journalists' privilege is asserted. But rather than affecting the existence of the qualified privilege, we think that these rights are important factors that must be considered in deciding whether, in the circumstances of an individual case, the privilege must yield to the defendant's need for the information.

*Cuthbertson I,* 630 F.2d at 147.

Considering the coequal interests presented by the instant petition, we deem it necessary to refine the reportorial privilege we earlier announced in *Hudok* as it applies to the specific facts of the criminal case before us.[10] Here, respondent West seeks unpublished photographs obtained by the relators in connection with their published stories describing the crime scene and surrounding circumstances of the first degree murder and arson with which respondent West is charged. In *Hudok,* we required "a clear and specific showing that the information is [1] highly material and relevant, [2] necessary or critical to the maintenance of the claim, and [3] not obtainable from other available sources" before disclosure of a reporter's news-gathering materials could be compelled. Syl. pt. 1, in part, 182 W.Va. 500, 389 S.E.2d 188. The relator newspapers both contend that respondent West has failed to make a showing that the requested photographs are highly material and relevant and necessary or critical to his defense. Respondent West responds that the photographs may have been taken from a different angle or at a different time than those already in his possession thereby providing exculpatory evidence. West also alleges that the newspapers' unpublished photographs may reveal tampering of the evidence since the photographs actually published by the relators are the only pictures showing police officers handling evidence at the crime scene. The relators reply that West's speculative assertions

---

to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

(Emphasis added). This provision of the United States Constitution applies to state criminal proceedings by virtue of Amendment XIV to the United States Constitution. *See* U.S. Const. amend. XIV, § 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.").

Likewise, Article III, Section 14 of the West Virginia Constitution protects a criminal defendant's right to a fair trial:

> Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. *In all such trials, the accused shall* be fully and plainly informed of the character and cause of the accusation, and *be confronted with the witness against him,* and shall have the assistance of counsel, and a reasonable time to prepare for his defence; *and there shall be awarded to him compulsory process for obtaining witnesses in his favor.*

(Emphasis added). The West Virginia Constitution also requires due process of law. *See* W. Va. Const. art. III, § 10 ("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.").

**10.** Due to the limited nature of our holding, we will discuss only the showing a criminal defendant must make in order to obtain a media source's unpublished photographs. For this reason, we decline to address the situation not presently before us regarding a criminal defendant's ability to obtain information revealed by confidential news sources.

do not satisfy the clear and specific showing required by *Hudok*.

While we decline to determine whether, in fact, the unpublished photographs would be highly material and relevant and necessary or critical to the respondent's defense, we do recognize the difficulty faced by respondent West in making such a showing. The *Hudok* standard requires the requesting party to make a clear and specific showing in order to obtain qualifiedly privileged information, yet the requestor often is unable to make such a showing since he/she has not yet seen the requested material. Although we do not condone a "fishing expedition" approach to this quandary, we do realize the need to devise a standard more considerate of the requesting party's uncertainty as to the true nature of the information requested.

Accordingly, we hold that when a criminal defendant seeks from a news source unpublished, nonconfidential information, he/she must show with particularity that: (1) the requested information is highly material and relevant to the defendant's articulated theory or theories of his/her defense; (2) the requested information is necessary or critical to the defendant's assertion of his/her articulated theory or theories of defense; and (3) the requested information is not obtainable from other available sources. We hold further that the "particularity" with which the defendant must satisfy this balancing test contemplates some explanation by the defendant as to what information he/she expects the media material to contain. A mere bald assertion, standing alone, that the allegedly privileged information satisfies the requisite criteria will not suffice.[11]

Faced with a similar criminal case, in which the defendant sought a newspaper's unpublished photographs of his arrest, the Supreme Court of Minnesota established an additional requirement to ensure the appropriate balancing of the media's right to a free press and the defendant's right to a fair trial. In *State v. Turner*, 550 N.W.2d 622 (1996), the Minnesota Supreme Court concluded that "the [trial] court should perform an in camera review of all unpublished photographs of [the defendant] and the police officers in the possession of [the newspaper] and only release those which would be relevant to [the defendant's] defense theory, as defined by his attorneys." *Id.* at 629. In establishing the *in camera* review requirement, the Court stated:

> We believe that concerns of overburdening the news media justify the implementation of an in camera procedure for reviewing unpublished information, including photographs, before forcing a news organization to disclose information in its possession to a litigant. If a litigant asserts that unpublished information or photographs possessed by a newspaper may be relevant to his or her case, in camera review by the [trial] court is an appropriate means of balancing the defendant's need for evidence to support his or her claims against the public's interest in a free and independent press.

*Id.* (citations omitted). *See also United States v. Cuthbertson (Cuthbertson II)*, 651 F.2d 189, 198 (3d Cir.) (Seitz, C.J., concurring) (advocating *in camera* review of allegedly privileged materials requested by subpoena in order to "obtain an impartial determination of whether the documents contain material that is producible under the subpoena and, in the case of a qualified privilege, whether such material is subject to disclosure under an appropriate balancing test"), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981).

We believe the approach adopted by the Minnesota high court to be a sound method of protecting both respondent West's

---

**11.** Although we reiterate our decision to refrain from addressing the merits of the relators' assertion of a news reporter's privilege in this case, we note that courts from other jurisdictions, requested to quash subpoenas seeking disclosure of news reporters' photographs in criminal cases, have refused to quash these subpoenas. *See, e.g., Satz v. News & Sun–Sentinel Co.*, 484 So.2d 590 (Fla.Dist.Ct.App.1985) (per curiam), *review de-* nied, 494 So.2d 1152 (Fla.1986); *State v. Turner*, 550 N.W.2d 622 (Minn.1996); *State v. Knutson*, 539 N.W.2d 254 (Minn.Ct.App.1995); *People v. Dupree*, 88 Misc.2d 791, 388 N.Y.S.2d 1000 (N.Y.Sup.Ct.1976); *Ex parte Grothe*, 687 S.W.2d 736 (Tex.Crim.App.1984) (en banc), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985).

right to a fair trial and the relator newspapers' right to a free press. Therefore, once a criminal defendant has shown with particularity that the unpublished, nonconfidential information requested from a news source satisfies the three-part threshold balancing test, the circuit court shall conduct an *in camera* review of the requested material and release to the defendant only that information which the court deems to be relevant to the defendant's articulated theory or theories of defense. Additionally, as we previously have required in other contexts, a circuit court, subsequent to performing the three-part threshold balancing test pursuant to a criminal defendant's request for unpublished, nonconfidential information from a news source and, in the appropriate circumstances, the ensuing *in camera* review, shall make specific written findings of fact.[12] These findings are a particularly valuable inclusion in the appellate record as we generally defer to the circuit court's evidentiary rulings. *See, e.g., In Interest of Tiffany Marie S.*, 196 W.Va. 223, 234, 470 S.E.2d 177, 188 (1996) (stating that this Court "will interfere with a circuit court's ruling on evidentiary matters only if [a party] demonstrates an abuse of the circuit court's substantial discretion" (citation omitted)); *Gentry v. Mangum*, 195 W.Va. 512, 518, 466 S.E.2d 171, 177 (1995) (reciting that "a reviewing court gives special deference to the evidentiary rulings of a circuit court" (footnote omitted)).

### III.

### CONCLUSION

For the foregoing reasons we conclude that a defendant in a criminal case may obtain unpublished, nonconfidential information from a media source upon both a particularized showing that the material sought satisfies the three above-enumerated requirements and, upon such a showing, an *in camera* review by the circuit court. Therefore, we remand this case to the Circuit Court of Kanawha County for further proceedings consistent with this opinion. We further direct the circuit court to render findings of fact in accordance with our decision.[13] Accordingly, the writ of prohibition is granted as moulded.

Writ granted as moulded.

MAYNARD, Justice, dissenting:

I believe the majority has created a "Fishing Expedition Exception" to the First Amendment guarantee of a free press. To continue the aquatic life metaphor, the majority is swimming in the jaws of a crocodile.

I strongly believe the First Amendment of the United States Constitution and Article III, Section 7 of the West Virginia Constitution absolutely bar this type of intrusion by the government into the files of a private company. This unwarranted invasion of the government into the private offices of a newspaper, which the majority allows, is an extremely dangerous threat to democracy. I believe the First Amendment absolutely prohibits this type of intrusion. Nonconfidential photographs taken by journalists in the course of newsgathering and kept as resource materials are protected from compelled disclosure under the free press and free speech guarantees of both our Federal and State Constitutions. Further, these constitutional provisions provide a reporter's privilege which is triggered where the material sought for disclosure was prepared or collected in the course of newsgathering.

12. Other contexts in which we have required a circuit court to render specific findings of fact include the balance of specific factors to determine the necessity of a deposition, *State ex rel. Paige v. Canady*, 197 W.Va. 154, 162, 475 S.E.2d 154, 162 (1996); an evidentiary hearing concerning a criminal defendant's motion to sever his charges, *State v. Ludwick*, 197 W.Va. 70, 75, 475 S.E.2d 70, 75 (1996) (per curiam); and a factual inquiry as to the appropriateness of mandatory joinder in a criminal case, *State ex rel. Forbes v. Canady*, 197 W.Va. 37, 47, 475 S.E.2d 37, 47 (1996).

13. At this juncture, we wish to commend Judge Ranson for reviewing *in camera* the subpoenaed photographs prior to ruling on the relators' motions to quash the respondent's subpoena. Despite the procedure followed by the circuit court, though, we believe it is necessary to remand this case to the circuit court for a review of the requested evidence pursuant to the standard we today establish.

To routinely permit resort to these resource materials jeopardizes the autonomy of the press. If not restricted, attempts to obtain evidence by subjecting the press to discovery would be widespread. This causes undue diversion of journalistic effort and disruption of press functions.

I believe a "reporter's shield" is inherent in the free press guarantees of both the Federal and State Constitutions. This Court previously recognized a reportorial or news reporter's privilege to decline to answer questions or to divulge information obtained in the course of newsgathering in an administrative setting in *State ex rel. Hudok v. Henry*, 182 W.Va. 500, 389 S.E.2d 188 (1989). Oddly, the majority in the case *sub judice* apparently refuses to recognize the same privilege in a criminal setting. The majority refuses, at least in part, to recognize the privilege because the Sixth Amendment to the United States Constitution and Article III, Section 14 of the West Virginia Constitution insure that a criminal defendant will have a fair trial. But, nowhere does the Sixth Amendment contain a provision that criminal defendants have a right to invade the premises and usurp the private property rights of a newspaper or any other news entity protected by the First Amendment.

The majority states that a criminal defendant can access privileged information after satisfying a tripartite balancing test, which is expressed in Syllabus Point 4: "(1) the requested information is highly material and relevant to the defendant's articulated theory or theories of his/her defense; (2) the requested information is necessary or critical to the defendant's assertion of his/her articulated theory or theories of defense; and (3) the requested information is not obtainable from other available sources." I do not understand what the majority is "balancing." I believe this is a three-part threshold test, however, it is not a "three-part threshold balancing test." The only "balancing" suggested in the majority opinion comes later.

After the defendant meets the tripartite test, the majority requires the circuit court to conduct an *in camera* review of the privileged material. During this review, the majority suggests that the trial judge balance the public's right to a free press with the defendant's right to a fair trial. They even state that they agree with this balancing test as it was adopted by the Minnesota Supreme Court; however, they do not state that West Virginia courts should or must balance these competing interests. Rather, the majority states that the judge must determine *in camera* which "information ... the court deems to be relevant to the defendant's articulated theory or theories of the defense." After making this single determination, the court must then release that information to the defendant. I believe additional considerations are necessary to insure the press can freely collect and edit news, unhampered by repeated demands for its resource materials.

The majority also fails to enlighten the media as to how the privileged information is to get from the newspaper's office to the judge's office. Is the judge, who is an official of the government, to go to the newspaper office and search through the files? Will the newspaper be forced to load up its files and deliver them to the judge? Can the defendant, with his lawyer, go to the newspaper office and search through the files? I do not know if this is scary to anyone else, but it scares the daylights out of me. This is the kind of thing that goes on in the Banana Republics of Central America, but not here!

I pause here to note the defendant's request was based solely on the mere hope that some exculpatory material might show up. The defendant states:

> There *may* be exculpatory information contained in the newspaper's photographs not accessible elsewhere. The Defendants contend that the newspaper's photographs may have been taken from a different angle from other photographs which would show evidence that would not be available anywhere else.... [The police officers] prior statement, *possibly* inconsistent, should be produced to the Defendant. (Emphasis added).

How can this be called anything but a fishing expedition? I do not think this raw speculation justifies allowing a criminal defendant to use the power of the state to invade the files of a private company. Criminal defendants can now use this guesswork scheme as a

pretext for delay. I believe the majority could better justify what they have allowed today if there was clearly exculpatory evidence; however, the defendant has made no showing the newspaper has anything that is useful or valuable to him.

To the extent America has been able to survive and thrive, we must credit the First Amendment with being one of the main reasons. Whether you like the press or not—and a lot of people in public life do not—if you love freedom and democracy, you better zealously support and protect the First Amendment.

If this Court is going to balance the First Amendment guarantee of a free press against a criminal defendant's Sixth Amendment right to a fair trial, I have no trouble deciding which side of the issue I come down on.

For all of the reasons stated above, I respectfully dissent.